Abdulaziz A. ALFADDA, Abdullah Abbar, Abdulla Kanoo, Abdulaziz Kanoo, Yusif Bin Ahmed Kanoo (a Partnership Company), and Ahmed A. Zainy, Plaintiffs,

v.

Richard A. FENN, Jamal Radwan, Saudi European Investment Corporation N.V., Saudi European Bank, S.A., Alef Investment Corporation N.V., and Alef Bank, S.A., Defendants.

No. 89 Civ. 6217 (LMM).

United States District Court,
S.D. New York.

Nov. 26, 1990.

Beirne, Maynard & Parsons, Houston, Tex. (Jeffrey R. Parsons and Craig Glidden, of counsel), Leboeuf, Lamb, Leiby & Macrae, New York City (Geoffry D.C. Best and Elena Naughton, of counsel), for plaintiffs.

Hughes Hubbard & Reed, New York City (George A. Davidson and Daniel Weiner, of counsel), for defendants Jamal Radwan, Saudi European Inv. Corp. N.V., Alef Inv. Corp. N.V. and Alef Bank, S.A.

Cahill Gordon & Reindel, New York City (Thomas J. Kavaler and Patrick Rocco, of counsel), for defendant Richard A. Fenn.

Sherman & Sterling, New York City (Joseph F. Haggerty, of counsel), for defendant Saudi European Bank, S.A.

## OPINION AND ORDER

McKENNA, District Judge.

Plaintiffs, five individual foreign nationals and one foreign partnership company, brought this action for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–68 (Count I), for violations of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5 of the Securities and Exchange Commission, 17 C.F.R. § 240.10b–5 (Count II; plaintiff Alfadda does not join in this Count), and for common law fraud, breach of fiduciary duty and rescission of contract. Plaintiffs premise their amended complaint upon their purchase of shares of stock through private placements. Defendants have moved to dismiss the amended complaint for lack of subject matter jurisdiction or on the ground of *forum non conveniens*.[1] Defendants have also moved to have the fraud claims dismissed for failure to plead fraud with particularity. For the reasons stated below, the amended complaint is dismissed for lack of subject matter jurisdiction.

## BACKGROUND

Defendant Saudi European Investment Corporation N.V. ("SEIC") is a closely held Netherlands Antilles company which operated as a holding and/or controlling company of the other corporate defendants, Saudi European Bank S.A. ("SE Bank") (now known as Societe de Banque Privee), a French bank, Alef Investment Corporation N.V. ("AIC"), a Netherlands Antilles corporation, and Alef Bank S.A. ("Alef Bank"), a French bank (collectively, the "SE Group"). The individual defendants, Jamal Radwan ("Radwan") and Richard Fenn ("Fenn") are United States citizens who are sued based upon their activities in connection with the corporate defendants.

---

1. The complaint was amended after defendants' motion to dismiss was filed and plaintiffs had had an opportunity for discovery directed to jurisdictional issues; the parties then argued the motion in light of the allegations of the complaint as amended.

The amended complaint alleges that on or about February 4, 1979 defendant Radwan invited plaintiff Alfadda to become a shareholder in a proposed company, SEIC. SEIC was to have 40,000 authorized shares of stock and the original stock offering would consist of 20,000 shares at a price of $1,000 per share. In July 1979, Alfadda purchased 1000 shares of SEIC voting stock for $1,000,000. Pursuant to the terms of the offering, Alfadda and the other holders of the original 20,000 shares sold were to be given a preference in the offering of new shares, in proportion to the number of original shares held by them.

Around October 1983, the defendants planned a second offering of SEIC stock. The original shares sold were to be subject to a 30 for 1 split, creating 600,000 shares. The prospectus for the second offering stated that another 600,000 voting shares (which represented the 20,000 shares which were not issued in the original offering split 30 for 1) were to be sold at $100 per share. In the event of an oversubscription, up to 1,800,000 non-voting shares were to be issued.

Plaintiffs allege that, despite the representations made in the prospectus upon which they relied, 1,200,000 voting shares were sold, diluting their interests. Plaintiff Alfadda claims that, despite his reliance upon the representations made to him when he purchased shares in the original offering, defendants never informed him of the second offering, thus depriving him of his preferential right to purchase new shares.

In addition, plaintiffs' RICO, breach of fiduciary duty, and common law fraud claims allege that the defendants diverted proceeds from the oversubscription of stock for their personal benefit and the benefit of certain favored SEIC shareholders, and that the defendants used United States mail, telephone and wire services to further their scheme and conceal their activities.

Plaintiffs allege conduct by the defendants claimed to be relevant to subject matter jurisdiction. Plaintiffs specifically assert the following: defendants hired Ronald Reilly, a United States citizen, and his company, Capital International, Inc., to help prepare and market the second offering, and he performed some of his functions in the United States; SEIC's general counsel, Mario Diaz-Cruz, Esq., assisted in the preparation of the offering in New York; shares were sold in the United States to Lincoln American Investments N.V. ("Lincoln"), a Netherlands Antilles subsidiary of American Continental Corporation ("ACC"), and to a foreign businessman, Abdulrahaman Al-Turki;[2] defendants repeatedly used United States mail, wire and telephone services; stock certificates were printed in New York and sent abroad; moneys used to purchase the shares were deposited in United States banks; meetings between representatives of ACC and the defendants were held in Washington, D.C. and Florida to assuage ACC and Al-Turki after they discovered and objected to the dilution of their interests; and the defendants purchased, with funds diverted from the proceeds of the oversubscription, one United States company and stock in another.

## SECURITIES LAW VIOLATIONS

The availability of authority suggests that plaintiffs' securities law claims (Count II) be considered before their RICO claim (Count I). The Second Circuit has considered the application of the federal securities laws to transnational transactions in a line of detailed decisions: *Schoenbaum v. Firstbrook*, 405 F.2d 200, *modified on other grounds* (*en banc*), 405 F.2d 215 (1968), *cert. denied*, 395 U.S. 906, 89 S.Ct. 1747, 23 L.Ed.2d 219 (1969); *Leasco Data Processing Equipment Corp. v. Maxwell*, 468 F.2d 1326 (1972); *Bersch v. Drexel Firestone, Inc.*, 519 F.2d 974, *cert. denied*, 423 U.S. 1018, 96 S.Ct. 453, 46 L.Ed.2d 389 (1975); *IIT v. Vencap, Ltd.*, 519 F.2d 1001 (1975);

---

**2.** Mr. Al-Turki is a plaintiff in a subsequent action filed in this Court in which allegations similar to those made in the present case are made. *Al-Turki, et al. v. Fenn, et al.*, S.D.N.Y.

90 Civ. 4470 (LMM). A second related case is *Resolution Trust Corporation, etc., et al. v. Fenn, et al.*, S.D.N.Y. 90 Civ. 6050 (LMM), involving the ACC transaction.

*Fidenas AG v. Compagnie Internationale*, 606 F.2d 5 (1979); *IIT v. Cornfeld*, 619 F.2d 909 (1980); *Psimenos v. E.F. Hutton & Co.*, 722 F.2d 1041 (1983); *AVC Nederland B.V. v. Atrium Inv. Partnership*, 740 F.2d 148 (1984); and *Consolidated Goldfields PLC v. Minorco*, 871 F.2d 252, *cert. dismissed,* —— U.S. ——, 110 S.Ct. 29, 106 L.Ed.2d 639 (1989).[3] In these cases, the Second Circuit developed two tests for determining when federal securities laws apply extraterritorially: the "conduct test," which looks to whether substantial conduct directly causing injuries to foreign plaintiffs takes place in this country; and the "effects test," which looks to whether conduct outside the country results in substantial and specific deleterious effects here. The conduct and effects tests are used to determine presumed Congressional intent as to extraterritorial application. In cases in which the securities laws are found not to have been intended to apply extraterritorially, subject matter jurisdiction does not exist.[4]

The Second Circuit considered both tests in *Bersch v. Drexel Firestone, Inc.*, 519 F.2d 974 (2d Cir.1975), *supra.* There, purchasers of common stock in a Canadian corporation brought suit as a class for violations of the securities laws and for common law fraud. Plaintiffs alleged that they relied on misleading prospectuses. The class included some Americans, but consisted predominantly of foreign nationals. The court held that where the conduct in the United States is merely preparatory, takes the form of culpable non-feasance, or is relatively inextensive in comparison to the extent of conduct abroad, there is no subject matter jurisdiction over a suit brought by foreign plaintiffs. 519 F.2d at 987.

While the *Bersch* court dismissed the claims of the foreign plaintiffs because of the insufficiency of the relevant conduct within the United States, it sustained subject matter jurisdiction over the claims of American plaintiffs under the effects test. The court explained that, regardless of whether or not acts of material importance occurred in the United States, the exercise of jurisdiction was warranted as to those plaintiffs because of the detrimental effects in the United States felt by United States citizens. *Id.* at 991.

Under the *Bersch* analysis, plaintiffs' claims for securities fraud must be dismissed. In *Bersch*, the court characterized the following as merely preparatory:

> ... representatives of IOS, the major underwriters in the Drexel Group, their attorneys and accountants met in New York on numerous occasions to initiate, organize and structure the offering; that a New York law firm was retained to represent the underwriters and had numerous meetings with IOS; that Drexel officials and counsel met with the SEC; that the underwriters retained Price Waterhouse & Co. in New York as accountants to assist in reviewing the operations of IOS and received reports from that firm there; that on one occasion Andersen representatives met in New York with the underwriters to explain why Andersen could not perform a full audit for the period January 1–June 30, 1969, within the time allotted and to discuss the amount of work that Andersen might be able to complete during that period; that preliminary discussions on underwriting discounts and commissions possibly took place in New York in July and August, 1969; that parts of the prospectus were drafted in New York and read over the phone to Geneva; that prospective underwriters were shown a draft of the prospectus in New York; and that accounts for the proceeds of the underwriting were opened at the Bank of New York

---

**3.** The late Judge Henry J. Friendly wrote the opinions for the court in *Leasco, Bersch,* the two *IIT* cases, and *AVC Nederland.*

**4.** The principal inquiry is whether, where a statute is silent as to its extraterritorial application, Congress intended it to apply to the transnational activity in question. *See* Brilmayer, *The Ex-* *traterritorial Application of American Law: A Methodological and Constitutional Appraisal,* 50 *Law and Contemporary Problems,* (1987) 11, at 14 nn. 18–21 (collecting cases). Some courts have held that legislation is presumed to apply only to events occuring within the United States. *Id.* at 15 n. 23 (collecting cases).

and the proceeds in dollars were to be deposited there pending remittance to IOS. *Id.* at 985 n. 24. All of the jurisdictionally relevant conduct alleged here by plaintiffs, taken together, is less than was found to be insufficient to sustain jurisdiction in *Bersch.*

Clarifying what type of conduct is more than merely preparatory, Judge Friendly wrote for the court that the fraud "was committed by placing the allegedly false and misleading prospectus in the purchasers' hands". *Id.* at 987. Here, it is uncontroverted that the prospectus was sent to the plaintiffs from Paris or Geneva, or hand delivered in Saudi Arabia or Bahrain.

Plaintiffs' reliance on *Psimenos v. E.F. Hutton & Co., Inc.,* 722 F.2d 1041 (2d Cir.1983), *supra,* is misplaced. In *Psimenos,* a Greek citizen opened a commodities trading account with the Athens office of E.F. Hutton. The plaintiff suffered losses because of trades made on his behalf on United States commodities markets. While the court found that most of the fraudulent misrepresentations occurred outside the United States, it held that the fraud was consummated in this country, observing that "[t]rading activities on United States commodities markets were significant acts without which Psimenos' losses would not have occurred and are sufficient to establish jurisdiction." *Id.* at 1048. The *Psimenos* court stressed that the commodities contracts were domestic contracts, domestically regulated and comparable to "securities of a United States corporation traded in the United States." *Id.* at 1047.

Here, by contrast, SEIC is a foreign corporation whose stock is not registered with any domestic exchange. Moreover, while in *Psimenos* the fraud could not have been completed without the trades in New York on the commodities markets, in this case nothing further had to be done to complete the fraud after plaintiffs paid for their SEIC shares in reliance upon the prospectus. As in *Bersch,* the fraud was perpetrated by placing the misleading prospectus into the plaintiffs' hands outside the United States.

Plaintiffs also argue that the prospectus emanated, as did the misleading pamphlet in *Psimenos,* from the United States, and that jurisdiction, therefore, should be sustained. To support their argument plaintiffs insist that the prospectus was prepared in the United States. Defendants, however, maintain that it was prepared in Paris.

■■■ The Court has authority to resolve factual disputes when a party moving to dismiss for lack of subject matter jurisdiction attacks the substance of the jurisdictional allegations. *Thornhill Pub. v. General Telephone & Electronics,* 594 F.2d 730, 733 (2d Cir.1979). *See* 5A C. Wright & A. Miller, *Federal Practice & Procedure* § 1350 (1990). Both sides have submitted evidence supporting their positions. While it is clear from this evidence that *some* work was done in the United States, much of the evidence, including the deposition testimony of Ronald Reilly and supporting documentation, points to Paris as the location where most of the production of the prospectus took place. The Court finds that the prospectus was prepared primarily outside the United States, and cannot be said to have emanated from here.

Moreover, even if the Court were convinced that the prospectus had emanated from the United States, that, by itself, would not be enough to confer jurisdiction. *Psimenos,* 722 F.2d at 1046. As stated in *Bersch,* the fraud is committed by placing the allegedly fraudulent prospectus in the plaintiffs' hands. 519 F.2d at 987. As already noted, plaintiffs received the prospectus outside the United States.

Plaintiffs contend that jurisdiction can also be sustained under the effects test. As articulated in *Schoenbaum v. Firstbrook, supra,* the effects test will confer jurisdiction over a claim involving acts done outside the United States but producing effects within it. 405 F.2d 200, 206 (2d Cir.1968) ("We believe that Congress intended the Exchange Act to have extraterritorial application in order to protect domestic investors who have purchased foreign securities on American exchanges and

to protect the domestic securities market from the effects of improper foreign transactions in American securities.") Contrary to plaintiffs' contentions, the effects test is inapplicable here. These plaintiffs are not "domestic investors" nor are the securities at issue traded on any domestic exchange.

Plaintiffs argue that the second offering was "predominantly American" because of the large number of shares allegedly sold in the United States to Lincoln and Al-Turki. If these two purchasers were indeed American investors, as plaintiffs claim, and they suffered injury from acts done outside the United States, then, *arguendo*, the exercise of jurisdiction over their claims might be justified.[5] Foreign plaintiffs, however, cannot sustain their claims on the basis that American investors have cognizable claims. In *Bersch*, the court severed the claims of the foreign plaintiffs from those of the Americans and held jurisdiction to exist under the effects test only over the Americans' claims. 519 F.2d at 990–992. Thus, the Court does not have jurisdiction over the claims of the plaintiffs under the effects test.

The other Second Circuit decisions cited at pages 5–6 above will not support subject matter jurisdiction over plaintiffs' securities law claims. In *Fidenas*, the Second Circuit decided that jurisdiction did not exist because the transactions were predominantly foreign, all the parties were foreign and any domestic activity was secondary and ancillary. The cases in which jurisdiction was sustained either involved conduct in the United States sufficient to confer jurisdiction, as in *Leasco* (material misrepresentations made in and sent to the United States and defrauded purchaser a wholly owned subsidiary of an American company whose stock was listed on the New York Stock Exchange); *Cornfeld* (transactions were fully consummated in the United States and securities at issue were securities of American corporations); and *AVC Nederland* (representations made and negotiations conducted in the United States and investments at issue involved American real estate owned by partnership formed in accordance with American law by two foreigners); or losses suffered by Americans as in *Minorco* (American residents represented 2.5% of the plaintiff corporation's shareholders).

## RICO VIOLATIONS

Plaintiffs allege that the SE Group (or SEIC) constitutes an enterprise within the meaning of RICO and that defendants have engaged in a pattern of racketeering activity which includes as predicate acts the securities fraud discussed above, as well as uses by defendants of the United States mails, wire communications, and transportation of money in interstate commerce, in violation of 18 U.S.C. §§ 1341, 1343 and 2314. The amended complaint states that the defendants used income derived from the pattern of racketeering activity to operate the SE Group (or SEIC) in violation of 18 U.S.C. § 1962(a); that defendants have acquired or maintained an interest in or control of the SE Group in violation of 18 U.S.C. § 1962(b); that defendants have conducted or participated in the conduct of the SE Group (or SEIC) in violation of 18 U.S.C. § 1962(c); and that defendants have conspired with each other in conducting the affairs of the SE Group (or SEIC) in violation of 18 U.S.C. § 1962(d). Because the alleged conduct took place only partly in the United States, the court must determine whether jurisdiction exists over the RICO claims.

The application of RICO to transnational transactions has not yet been explored with the thoroughness with which the Second Circuit has considered the extraterritorial application of the securities laws. The only Second Circuit decision on the subject cited by plaintiffs is *United States v. Parness*, 503 F.2d 430 (2d Cir.1974). In *Parness*, however, the pattern of racketeering activity took place almost entirely within the United States and the question was whether the acquisition of a foreign company with illegally obtained funds violated the statute. The Second Circuit held that

---

**5.** Defendants have not moved to dismiss the related cases cited in footnote 2, *supra,* and nothing contained in this opinion is intended to express a view as to those cases.

RICO prohibited acquiring a foreign company with funds obtained through predicate conduct within the United States. The court pointed out that a contrary construction of RICO "would permit those whose actions ravage the American economy to escape prosecution simply by investing the proceeds of their ill-gotten gains in a foreign enterprise." 503 F.2d at 439. Here, however, the "ill-gotten gains" are the moneys obtained by defendants from foreign nationals, and it is, if the allegations of the amended complaint are correct, the economies of Saudi Arabia and Bahrain, not that of the United States, that may be claimed to have been "ravaged."

■ The question before this Court is whether there is subject matter jurisdiction over a RICO claim where some but not all of the alleged predicate conduct took place within the United States, where the underlying fraud to which those predicate acts relate took place outside the United States and where the cognizable damages occur to foreign nationals outside the United States.

Although the question was not articulated as such, it was implicitly presented to the Ninth Circuit in *Republic of the Philippines v. Marcos*, 862 F.2d 1355 (9th Cir. 1988) (*en banc*), also relied on by plaintiffs. *Marcos* involved a RICO claim to the effect that Ferdinand and Imelda Marcos plundered the Philippines and then invested some of the funds thus obtained in the United States. Among the predicate acts which constituted the pattern of racketeering were instances of mail and wire fraud occurring in United States territory and the transportation of stolen property across international borders. Sustaining jurisdiction, the Ninth Circuit wrote: "The criminal enterprise which [the Marcoses] are charged with conducting consisted in operations taking place within the United States. These operations had multiple effects on the domestic and foreign commerce of this country." *Id.* at 1358.

Under the Ninth Circuit analysis, subject matter jurisdiction over this case would probably be sustained. As in *Marcos*, the pattern of racketeering alleged by the plaintiffs includes instances of mail and wire fraud within the United States and the transportation in commerce of fraudulently obtained property.

However, the Court doubts that the Second Circuit would, in a case such as this one, extend the extraterritorial application of RICO as far as the Ninth Circuit did in *Marcos*. The Second Circuit's standard for the extraterritorial application of federal securities law is more restrictive than that of the Ninth and other Circuits. The Second Circuit requires that the acts performed in the United States directly cause the losses to foreign plaintiffs. *See Bersch, supra,* 519 F.2d at 993 (federal securities laws do not "apply to losses from sales of securities to foreigners outside the United States unless acts ... within the United States directly caused such losses."); *IIT v. Vencap,* 519 F.2d 1001, 1018 (2d Cir.1975), *supra; see also Zoelsch v. Arthur Andersen & Co.,* 824 F.2d 27 (D.C. Cir.1987) (comparing the standards set by various Circuits and adopting the Second Circuit's as "the most restrictive"). The Ninth Circuit, on the other hand, only requires that significant acts in furtherance of the fraud take place in the United States. *Grunenthal GmbH v. Hotz,* 712 F.2d 421 (9th Cir.1983). By analogy to the Second Circuit's standard in the securities law context, the Court concludes that the standard for applying RICO extraterritorially in this Circuit is more restrictive than that in the Ninth, and the Court declines to follow *Marcos*.

The standards within this Circuit for applying United States securities laws and RICO to transnational transactions—at least when RICO is asserted, as here, to recover for what at bottom is a securities fraud—should be consistent. In finding subject matter jurisdiction over RICO claims in *Parness, supra,* the Second Circuit looked, *inter alia,* to the securities law analogy, citing *Leasco, supra,* where, it said, "in dealing with one of the antifraud provisions of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (1970), we have held that, where there is substantial United States activity and Americans are hurt, it is

immaterial that the corporation is foreign." 503 F.2d at 440.

Denial of subject matter jurisdiction over plaintiffs' RICO claim is also consistent with the provisions of the American Law Institute's Restatement, to which the Second Circuit has looked in the securities law context. *See Leasco, Bersch, Vencap, Avc Nederland,* and *Minorco, supra.* The Restatement standards are equivalent to the conduct and effects tests developed in the Second Circuit securities law cases. "[A] state has jurisdiction to prescribe law with respect to (1)(a) conduct that, wholly or in substantial part, takes place within its territory; ... (c) conduct outside its territory that has or is intended to have substantial effect within its territory; ..." Restatement (Third), The Foreign Relations Law of the United States § 402 (1986). Such jurisdiction, moreover, is subject to a reasonableness limitation, requiring evaluation of, among other things, "the link of the activity to the territory of the regulating state, *i.e.,* the extent to which the activity takes place within the territory, or has substantial, direct, and foreseeable effect upon or in the territory," and "the connections, such as nationality, residence or economic activity, between the regulating state and the person principally responsible for the activity to be regulated, or between that state and those whom the regulation is designed to protect." *Id.* § 403. As has been seen, the facts of the present case do not meet these standards. The principal activity complained of—the communication of fraudulent representations—took place outside of the United States, and the effects of that activity were felt by foreign nationals outside of the United States. Four of the six defendants alleged to be responsible for the plaintiffs' loss are foreign entities and one, Jamal Radwan, while a citizen of the United States, appears from all of the materials submitted to be a resident of France, not of the United States. Defendant Fenn's American citizenship and residence are not enough to outweigh the foreign connections of the plaintiffs and the other defendants on the Restatement's reasonableness scale.

It is, of course, true that plaintiffs allege predicate activity within the United States. Amended Complaint ¶ 107. Much of it is preparatory to the fraudulent sales to plaintiffs, and the balance is largely related to the alleged concealment of the fraud. Some of it relates to the sales to Mr. Al-Turki and to Lincoln. Such activity, however, is subsidiary to the securities fraud upon plaintiffs which, they assert, was the "essence of defendants' scheme," which "was to represent to investors such as the plaintiffs that SEIC and the SE Group intended to operate the Corporate Defendants as *bona fide* businesses in the manner represented in the Prospectus; in fact, Radwan's and Fenn's true intention was to employ the SE Group, SEIC and their affiliated enterprises as vehicles for self-dealing and fraud." *Id.* ¶ 27. The structure of RICO is such that it will no doubt often be possible to include in a RICO complaint challenging a transnational transaction some subsidiary predicate acts taking place in the United States. Where, however, as here and in so many RICO cases, the heart of the claim is fraud in the sale of securities, there is no basis for thinking that Congress intended predicate acts which are either preparatory, or constitute the after-the-event working out of an already completed fraud, to confer otherwise non-existent subject matter jurisdiction.

Therefore, the Court holds that when the RICO predicate acts occuring in the United States consist of subsidiary uses of United States communications and transportation systems, but the underlying fraud occurs outside the United States, the Court lacks subject matter jurisdiction over the RICO claim. The tail should not wag the dog. The law in the Second Circuit is that subject matter jurisdiction over the plaintiffs' underlying securities fraud claims does not exist. Consequently, jurisdiction over the RICO claims, which are primarily predicated upon the securities fraud claims, does not exist either. Conduct more substantial than that alleged here must take place in the United States for RICO jurisdiction to be sustained.

Plaintiffs argue that Congress does not want the United States to be used as a base

for manufacturing and exporting fraudulent securities schemes. They are correct. Congress does not. *IIT v. Vencap, supra,* 519 F.2d at 1017. Their securities fraud and RICO claims, however, do not assert claims in which the United States was used as the operating base for the exportation of fraudulent schemes. Rather, the base of operations in this case was outside the United States, and the actions taken here were subsidiary.

The Second Circuit observed in *Bersch:*

When, as here, a court is confronted with transactions that on any view are predominantly foreign, it must seek to determine whether Congress would have wished the precious resources of the United States Courts and law enforcement agencies to be devoted to them rather than leave the problem to foreign countries.

519 F.2d at 985. This Court does not believe that Congress would have wished the limited judicial resources of the United States to be expended on litigating RICO claims where the domestic conduct amounts to subsidiary uses of the United States communications and transportation systems.

If the Court were to hold otherwise, then jurisdiction could be sustained over a foreign plaintiff's RICO claim solely because the RICO defendants made, say, two telephone calls within the United States, or used the United States mails on two occasions. Given the vast number of foreign and transnational business transactions in which United States mails, wire and telephone systems are used merely by happenstance, United States courts could become flooded with countless foreign based RICO claims bearing little or no nexus to this country. While it is no doubt true that implementation of RICO has exceeded Congress' original vision of the statute (*see generally,* Lynch, *RICO: The Crime of Being A Criminal,* 87 Colum.L.Rev. 661, 920 (1987)), plaintiffs have cited nothing in either the statutory language or its legislative history to indicate that Congress would consider it desirable to apply RICO to expand the jurisdiction of the federal courts so prodigiously.

## PENDENT CLAIMS

All plaintiffs, and all defendants except Fenn, a citizen of New York, and Radwan, who may not be a citizen of any state, are aliens. In the absence of subject matter jurisdiction over plaintiffs' claims asserted under statutes of the United States, their remaining state law claims are dismissed as well. *Philan Ins. Ltd. v. Frank B. Hall & Co., Inc.,* 712 F.Supp. 339 (S.D.N.Y.1989) (Walker, J.), at 345–346.

## THE BOND ORDER

By order dated May 10, 1990, the Judge to whom this case was previously assigned required plaintiffs to post a bond in the sum of $300,000 in connection with their conduct of discovery of jurisdictional facts. The order was entered pursuant to Fed.R. Civ.P. 26, and was clearly prompted by a concern that plaintiffs might use liberal federal discovery procedures to obtain information for use in litigation pending outside the United States. Plaintiffs have moved for reconsideration of that order. Subsequent to the order, plaintiffs deposited 5000 shares of SEIC stock with the Clerk of the Court. The Court finds that plaintiffs did not abuse the jurisdictional discovery afforded them, and the Clerk will return the shares to them. Defendants have argued that the bond should also be available to satisfy any judgment obtained by them for costs and any possible order imposing sanctions. The order, however, by its terms, related only to discovery, as its explicit reference to Fed.R.Civ.P. 26 makes clear, and sanctions, in any event, are not warranted.

In view of such direction and the disposition of defendants' motion to dismiss, the motion for reconsideration is DENIED as moot.

## CONCLUSION

For the reasons stated above, defendants' motion to dismiss the complaint for lack of subject matter jurisdiction is GRANTED. The Court accordingly finds

it unnecessary to consider defendants' motions to dismiss the fraud claims for failure to plead fraud with particularity and to dismiss the complaint on the grounds of *forum non conveniens.* The complaint was amended subsequent to defendants' challenge to subject matter jurisdiction and after discovery of jurisdictional facts, and the amended complaint alleges facts claimed to be relevant to subject matter jurisdiction in great detail. There is, accordingly, no warrant for giving plaintiffs leave to replead.

Plaintiffs motion for reconsideration of the bond order is DENIED as moot. The Clerk is directed to return to plaintiffs' authorized representatives all shares of SEIC stock previously deposited.

The amended complaint is DISMISSED.

SO ORDERED.