935 F.2d 475
 59 USLW 2767, Fed. Sec. L. Rep. P 96,027,
RICO Bus.Disp.Guide 7774
 Abdulaziz A. ALFADDA, Abdullah Abbar, Abdulla Kanoo,
Abdulaziz Kanoo, Yusif Bin Ahmed Kanoo (a
partnership company), and Ahmed A.
Zainy, Plaintiffs-Appellants,
v.
Richard A. FENN, Jamal Radwan, Saudi European Investment
Corporation N.V., Saudi European Bank, S.A., Alef
Investment Corporation N.V., and Alef
Bank, S.A., Defendants-Appellees.
 No. 1291, Docket 90-9129.
 United States Court of Appeals,
Second Circuit.
 Argued April 18, 1991.
Decided June 5, 1991.
 
 Geoffry D.C. Best, New York City (LeBoeuf, Lamb, Leiby & MacRae, New York City, Gwenellen P. Janov, Elena M. Naughton, Anthony M. Sabino, of counsel), Craig B. Glidden, Houston, Tex. (Beirne, Maynard & Parsons, Houston, Tex., Jeffrey R. Parsons, of counsel), for plaintiffs-appellants.
 George A. Davidson, New York City (Hughes Hubbard & Reed, New York City, Daniel H. Weiner, of counsel), for defendant-appellees Jamal Radwan, Saudi European Inv. Corp. N.V., Alef Inv. Corp. N.V., and Alef Bank, S.A.
 Thomas J. Kavaler, New York City (Cahill Gordon & Reindel, New York City, Patrick L. Rocco, of counsel), for defendant-appellee Richard A. Fenn.
 Joseph F. Haggerty, New York City (Shearman & Sterling, New York City, Danforth Newcomb, Peter L. Lindseth, of counsel), for defendant-appellee Societe de Banque Privee, S.A., formerly Saudi European Bank, S.A.
 Before LUMBARD, FEINBERG, and McLAUGHLIN, Circuit Judges.
 LUMBARD, Circuit Judge:
 
 
 1
 Plaintiffs appeal from the November 26, 1990 order of the Southern District of New York, Lawrence M. McKenna, Judge, dismissing their amended complaint for lack of subject matter jurisdiction. Plaintiffs, investors in defendant, Saudi European Investment Corporation N.V. (SEIC) allege that they were defrauded[1] when their stake in SEIC was diluted by sales in contravention of an offering prospectus, and that defendants diverted the proceeds from the sales for their personal benefit and the benefit of certain favored SEIC shareholders. The district court held that it had no jurisdiction as it found that the alleged fraud was perpetrated outside the United States. We reverse and remand for further proceedings because of plaintiffs' largely uncontested allegations that fraudulent conduct occurred in the United States.
 
 
 2
 Plaintiffs, Abdulaziz Alfadda, Abdullah Abbar, Ahmed Zainy, and Abdulla Kanoo, Abdulaziz Kanoo and Yusif Bin Ahmed Kanoo (the latter three plaintiffs referred to as "the Kanoos"), all residents and nationals of Saudi Arabia or Bahrain, filed their complaint in September 1989 naming SEIC, a closely held Netherlands Antilles company[2]; Saudi European Bank, S.A. and Alef Bank, S.A., both French banks; Alef Investment Corporation N.V., a Netherlands Antilles corporation; Jamal Radwan, chairman of SEIC, and Richard Fenn, former vice-chairman of SEIC, both United States citizens, as defendants.
 
 
 3
 The Amended Complaint alleges that on or about February 4, 1979, Radwan invited Alfadda to become a shareholder in a proposed company, SEIC. The original stock offering consisted of 20,000 shares at a price of $1,000 per share.[3] In July 1979, Alfadda purchased 1,000 shares of SEIC for $1,000,000. Pursuant to the terms of the 1979 offering, Alfadda and the other holders of the original 20,000 shares distributed were to be given a preference in the offering of new shares, in proportion to the number of original shares held by them.
 
 
 4
 Around October 1983, Radwan and Fenn planned a second offering of SEIC stock. The original shares were to be subject to a thirty to one split, creating 600,000 shares. The prospectus for the second offering stated that another 600,000 shares (which represented the 20,000 shares which were not issued in the original offering split thirty to one) were to be sold at $100 per share. In the event of an oversubscription, up to 1,800,000 non-voting shares were to be issued. The Kanoos purchased 10,000 shares of SEIC for $1,000,000 on April 9, 1984. On April 2 and 10, 1984, Zainy and Abbar each paid $1,000,000 for 10,000 shares of SEIC, respectively.
 
 
 5
 Plaintiffs allege that despite representations made in the 1984 offering prospectus upon which they relied, 1,200,000 voting shares were sold, thereby diluting their voting interests in SEIC. In addition, Alfadda claims that, despite his reliance upon the representations made to him when he purchased the shares in the original 1979 offering, defendants never informed him of the second offering, thus depriving him of his preferential right to purchase new shares.
 
 
 6
 Plaintiffs contend, and the defendants do not dispute,[4] that sales to a subsidiary of American Continental Corp. and Abdulrahman Al-Turki, which resulted in the alleged dilution of plaintiffs' voting interests, occurred almost entirely in the United States. In his deposition, Fenn admitted to meeting Charles Keating, chairman of Phoenix-based American Continental, in New York City where Keating informed Fenn that "he would like to take a stake in [SEIC's] capital offering." On May 2, American Continental notified SEIC that its savings and loan subsidiary, Lincoln Savings and Loan Association, wanted to purchase 15% of SEIC's voting shares. Six days after the offer, SEIC telexed American Continental in Phoenix directing it to deposit payment for the shares in a New York bank account. Toward the end of May 1984, Fenn, Radwan and Ronald Reilly, president of Capital International, Inc.,[5] met with Keating and other representatives of American Continental in Phoenix. Although it is not known what was discussed at the meeting,[6] approximately one week later, Fenn telexed Reilly that the $18,000,000 "from American Continental has finally arrived." Because the prospectus had stated that the shares of SEIC would "not be offered or sold directly or indirectly in the United States," American Continental created a subsidiary off-shore shell company, Lincoln American Investments N.V., to purchase the SEIC shares.
 
 
 7
 Plaintiffs also allege that on or around June 20, 1984, Radwan telephoned Al-Turki in Houston[7] to advise him that American Continental agreed to purchase 15% of SEIC's outstanding stock and that if Al-Turki agreed to a large subscription, he, along with Radwan, Keating and another original SEIC investor would control SEIC. On June 22, Reilly telexed Al-Turki to inquire if SEIC could expect an "agreement" on the SEIC offering. Al-Turki sent a return telex to Reilly in which he accepted SEIC's offer to purchase 150,000 voting shares for $15,000,000. On June 26, SEIC telexed Al-Turki in Houston accepting his offer and directing him to deposit his payment in a New York bank account.[8]
 
 
 8
 In dismissing plaintiffs' securities law claims for lack of subject matter jurisdiction, the district court held that "the fraud was perpetrated by placing the misleading prospectus into the plaintiffs' hands outside the United States." 751 F.Supp. 1114, 1118 (S.D.N.Y.1990). Apparently considering plaintiffs' allegations of SEIC stock sales to Lincoln American Investments and Al-Turki as irrelevant to the question of jurisdiction, the district court did not consider the import of this alleged conduct in the United States. Accepting plaintiffs' largely uncontested allegations of conduct consummating the fraud in the United States as true, see Wright and Miller, Federal Practice and Procedure Sec. 1350 at 220 (2d ed. 1990) (uncontroverted factual allegations in the body of the complaint taken as true on disposition of motion to dismiss for lack of subject matter jurisdiction), we reverse and remand for further proceedings.
 
 
 9
 The Securities Exchange Act is silent as to its extraterritorial application. Cf. 15 U.S.C. Sec. 78aa (1988) (vesting federal district courts with exclusive original jurisdiction for violations of the Act). Thus, in addressing transnational frauds, courts must ascertain "whether Congress would have wished the precious resources of the United States courts" to be devoted to such transactions. Psimenos v. E.F. Hutton & Co., 722 F.2d 1041, 1045 (2d Cir.1983) (quoting Bersch v. Drexel Firestone, Inc., 519 F.2d 974, 985 (2d Cir.), cert. denied, 423 U.S. 1018, 96 S.Ct. 453, 46 L.Ed.2d 389 (1975)). Under our decisions, two tests have emerged for determining whether a federal court has subject matter jurisdiction over a foreign plaintiff's claim under the antifraud provisions of the securities laws. Under the "conduct" test, a federal court has subject matter jurisdiction if the defendant's conduct in the United States was more than merely preparatory to the fraud, and particular acts or culpable failures to act within the United States directly caused losses to foreign investors abroad. See Psimenos, 722 F.2d at 1046 (citing Bersch, 519 F.2d at 993). A federal court also has jurisdiction under the "effects" test where illegal activity abroad causes a "substantial effect" within the United States. See Consolidated Gold Fields PLC v. Minorco, S.A., 871 F.2d 252, 261-62 (2d Cir.1989). As we find that the allegations are sufficient to show that there is jurisdiction under the conduct test, we reverse.
 
 
 10
 In employing the conduct test, Judge Friendly wrote that subject matter jurisdiction could be based upon the "perpetration of fraudulent acts themselves [but] does not extend to mere preparatory activities or the failure to prevent fraudulent acts where the bulk of the activity was performed in foreign countries, such as in Bersch." ITT v. Vencap, Ltd., 519 F.2d 1001, 1018 (2d Cir.1975). In Psimenos, we held that lawsuits by aliens alleging securities fraud should be entertained in American courts "only where conduct material to the completion of the fraud occurred in the United States." 722 F.2d at 1046. In this case, we find that the negotiations with and sales to American Continental and Al-Turki constituted conduct resulting in the consummation of the securities law fraud.
 
 
 11
 We disagree with the district court's finding that "nothing further had to be done to complete the fraud after plaintiffs paid for their SEIC shares in reliance upon the prospectus." 751 F.Supp. at 1118. Plaintiffs, except Alfadda, purchased their shares in April 1984. The sales to Lincoln and Al-Turki were not finalized until June. Thus, the prospectuses did not become fraudulent until additional voting shares were sold to Lincoln and Al-Turki. At the very least, the negotiations and communications of Radwan, Fenn and Reilly with American Continental officers and Al-Turki constituted "conduct material to the completion of the fraud ...", Psimenos, 722 F.2d at 1046, and hence are a basis for subject matter jurisdiction.
 
 
 12
 The fact that American Continental's investment was structured so that its subsidiary, Lincoln American Investments, a Netherlands Antilles shell company created for the purpose of holding the SEIC shares, was the nominal purchaser does not detract from the import of the United States meetings and negotiations which preceded the sale. See Restatement (Second) of Foreign Relations Law of the United States Sec. 416(d) (1987) ("The United States may generally exercise jurisdiction to prescribe with respect to conduct occurring predominantly in the United States that is related to a transaction in securities, even if the transaction takes place outside the United States."). Defendants also argue that Al-Turki negotiated for and decided to purchase SEIC stock while in several non-United States locations prior to the June telexes Al-Turki received in Houston. However, in the district court, Al-Turki averred that "[a]s of June 22, 1984, I had not agreed to participate in the SEIC Stock Offering." The district court did not resolve this factual dispute. Viewing the evidence in the light most favorable to the plaintiffs, as we must on appeal of the dismissal of a complaint for lack of subject matter jurisdiction, we find that negotiations for the sale of SEIC stock to Al-Turki transpired in Houston in late June.
 
 
 13
 The district court also dismissed plaintiffs' RICO claims for lack of subject matter jurisdiction. Like the Securities Exchange Act, the RICO statute is silent as to its extraterritorial application. Thus, we must ascertain whether Congress would have intended that federal courts should be concerned with specific international controversies. See Brilmayer, The Extraterritorial Application of American Law: A Methodological and Constitutional Appraisal, 50 Law & Contemp. Probs. 11, 14 nn. 18-21 (Summer 1987) (collecting cases).
 
 
 14
 Relative to subject matter jurisdiction for international securities transactions, there is a dearth of Second Circuit precedent regarding the extraterritorial application of RICO. However, in United States v. Parness, 503 F.2d 430 (2d Cir.1974), cert. denied, 419 U.S. 1105, 95 S.Ct. 775, 42 L.Ed.2d 801 (1975), we rejected arguments circumscribing RICO's extraterritorial application to foreign enterprises:
 
 
 15
 On its face the proscription [against acquiring an "enterprise"] is all inclusive. It permits no inference that the [RICO] Act was intended to have a parochial application. The legislative history, moreover, indicates the intent of Congress that this provision be broadly construed.... In short, we find no indication that Congress intended to limit Title IX [RICO] to infiltration of domestic enterprises. On the contrary, the salutary purposes of the Act would be frustrated by such construction.
 
 
 16
 Id. at 439. The mere fact that the corporate defendants are foreign entities does not immunize them from the reach of RICO.
 
 
 17
 As the Supreme Court has stated, "the heart of any RICO complaint is the allegation of a pattern of racketeering activity." Agency Holding Corp. v. Malley-Duff & Associates, Inc., 483 U.S. 143, 154, 107 S.Ct. 2759, 2766, 97 L.Ed.2d 121 (1987) (emphasis in original). Among the predicate acts alleged by plaintiffs are the securities fraud violations consummated by the sales of SEIC shares to Lincoln American Investments and Al-Turki. Reilly and defendants Radwan and Fenn, all American citizens, participated in many of the United States communications and negotiations preceding the sales. Nevertheless, the district court dismissed the RICO claims because it considered these predicate acts to "constitute the after-the-event working out of an already completed fraud...." 751 F.Supp. at 1121. As discussed supra, we disagree with the district court's holding that the alleged fraud was complete upon delivery of the misrepresentations contained in the prospectuses and the subsequent purchases of SEIC stock by plaintiffs Abbar, Zainy and the Kanoos in April 1984. The sales to Lincoln American Investments and Al-Turki were predicate acts which occurred primarily in the United States, and hence, serve as a basis of subject matter jurisdiction for the RICO claims.
 
 
 18
 Reversed and remanded for further proceedings.
 
 
 
 [1]
 The Amended Complaint sets forth causes of action for violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. Sec. 1962(a)-(d) (1988), violations of Sec. 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. Sec. 78j(b) (1988), and Rule 10b-5 of the Securities and Exchange Commission, 17 C.F.R. Sec. 240.10b-5 (1990) (plaintiff Alfadda does not join in this count), common law fraud, breach of fiduciary duty and recision of contract
 
 
 [2]
 SEIC operated as a holding and/or controlling company of the other corporate defendants
 
 
 [3]
 Although SEIC had authorized 40,000 shares of its stock, only 20,000 shares were distributed in the 1979 offering
 
 
 [4]
 Although the defendants disputed the legal significance of the events transpiring in the United States during argument before us, they did not contest their occurrence
 
 
 [5]
 Capital International was hired by SEIC to market its private offering
 
 
 [6]
 Fenn averred that while the meeting concerned topics unrelated to the SEIC offering, he did not remember what those topics were
 
 
 [7]
 Al-Turki, a foreign national and resident of Saudi Arabia, owned a Saudi enterprise with offices in Houston
 
 
 [8]
 Both Al-Turki and Lincoln's successor in interest, the Resolution Trust Corp., have filed separate lawsuits against these defendants in the Southern District making allegations similar to those in the present case. In the Resolution Trust lawsuit, Gadsby & Hannah, Ronald Reilly and Mario Diaz-Cruz III were named as defendants in addition to the defendants in this case