**STARLIGHT INTERNATIONAL, INC., Plaintiff,**

v.

**Joseph B. HERLIHY, Jr. et al., Defendants.**

**Civil Action No. 97–2329–GTV.**

United States District Court, D. Kansas.

July 21, 1998.

Stanley D. Davis, Sean W. Colligan, Stinson, Mag & Fizzell, P.C., Kansas City, MO, Eric Alan Kuwana, Charles E. Talisman, David A. Colodny, Michael T. Wood, Ronald S. Liebman, Patton Boggs, L.L.P., Washington, DC, for Starlight Intern. Inc.

Robert H. Gardner, Mark D. Murphy, Jackson & Murphy, L.L.C., Overland Park, KS, for Joseph B. Herlihy, Jr., 21st Century Enterprises Ltd., Miller Group and Miller/21st Century Group.

David J. Dawes, Belgium, Germany, pro se.

Brian A. Mark, Morrison & Hecker L.L.P., Kansas City, MO, Gregory L. Lyons, Moss & Rocovich, Roanoke, VA, Karen R. Glickstein, Paul L. Wickens, Mark E. Harris, Foland & Wickens, P.C., Kansas City, MO, for Verkruisen Trading, Marnix C. Verkruisen, David Holland and Christian Heysse.

Mark D. Murphy, R. Mark Nasteff, Jackson & Murphy, L.L.C., Overland Park, KS, for Alan J. Bruce.

## MEMORANDUM AND ORDER

VAN BEBBER, Chief Judge.

Plaintiff brings this action pursuant to the Securities Exchange Act of 1934 ("1934 Act"), 15 U.S.C. § 78a et seq., the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq., and state common law alleging that defendants conspired to defraud the company of approximately $3.5 million. The case is before the court on the motion (Doc. 77) of three defendants—Verkruisen Trading, Marnix Verkruisen, and Christian Heysse—to dismiss for lack of subject-matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1) and/or personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2). For the reasons set forth below, defendants' motion is denied.

### I.  Factual Background

The following facts are either uncontroverted or viewed in a light most favorable to the plaintiff. The facts are derived from undisputed allegations in the complaint as well as affidavits and documentary materials attached to the parties' pleadings.

### A.  The Parties

Plaintiff Starlight International, Inc., a Panamanian corporation with offices in Panama and England, filed a forty-eight page complaint in this action alleging acts of conspiracy and other illegal conduct, which ultimately culminated in the company's loss of more than $3.5 million. Plaintiff's allegations involve two distinct groups of defendants. The first group, encompassing entities and individuals who either reside or operate in the District of Kansas, includes defendants Joseph B. Herlihy, Jr., 21st Century Enter-

prises, Ltd., the Miller Group, and the Miller/21st Century Group. The court will refer to this set of defendants collectively as the "21st Century defendants." Although plaintiff alleges that each of the 21st Century defendants has ties to this district, none of the entities among this group are alleged to have been incorporated in the United States and Mr. Herlihy is not an American citizen.

The second group of defendants, which is comprised of individuals and companies purportedly operating exclusively outside the United States, includes Verkruisen Trading, Marnix Verkruisen, Christian Heysse, David Holland, David J. Dawes, Alan J. Bruce, Ray Metcalfe, and Bruce, Metcalfe & Company. Plaintiff alleges that although this second group of defendants consists only of persons and entities foreign to the United States, each collaborated in the fraudulent conspiracy linked to this district in which plaintiff lost millions of dollars.

### B.  Defendants' Alleged Fraudulent Scheme

Plaintiff alleges that defendants engaged in a fraudulent scheme designed to induce plaintiff to participate in various sham investment programs. Under these programs, which defendants denominated "roll programs," "bank debenture instrument trading," and "buy/sell transactions" (collectively referred to as "roll programs"), defendants claimed that they could purchase discounted debt instruments issued or guaranteed by banks with superior credit ratings and resell them immediately at a substantial profit. Defendants represented that the proceeds from these transactions would then be reinvested in identical investments on a rolling basis, thereby generating sizable profits for plaintiff. In reality, however, such investment programs did not exist; they were merely part of an illegal scheme commonly known as "prime bank investment fraud."

Both the nature of the alleged scheme and each defendant's role therein are convoluted. Because plaintiff has articulated its case with more specificity than is necessary, the court will attempt to boil down plaintiff's allegations to the bare essentials. In April 1995, plaintiff executed a contract at its Panamanian headquarters with Verkruisen Trading

setting forth the precise terms of the previously described roll programs and simultaneously transferred $3.5 million to one of the Dutch firm's Geneva accounts for capital investment.[1] The agreement provided that the funds would remain plaintiff's property, but would be held in an escrow account under the sole control of Christian Heysse and could be used only to "create the trading capital needed to realize the investment banking—including the payment of administrative costs, bank fees, etc. (to produce [the plaintiff's] profit)." (Defs.' Mot. to Dismiss, Ex. A at 3). In correspondence prior to the execution of that contract, Verkruisen Trading falsely represented that similar programs had been approved by the Federal Reserve Board.

Shortly after execution of the contract, Verkruisen Trading and the Miller/21st Century Group inked a contract under which the Miller/21st Century Group agreed to establish a $100 million line of credit for Verkruisen Trading's roll programs in return for a $2.975 million "facility fee." These two parties negotiated the terms of the agreement via letters and faxes sent from, and to, the Miller/21st Century Group's Kansas offices. Plaintiff alleges that this contract as well as the purported negotiations between Verkruisen Trading and the Miller/21st Century Group were a sham and that neither party envisioned any trading in debenture instruments.

In May 1995, Verkruisen Trading, without plaintiff's knowledge or approval, wired just under $2.975 million of plaintiff's funds into a Citibank account in New York under the control of the Miller/21st Century Group. Verkruisen Trading contends that it subsequently attempted to fulfill its obligations under the contract but was prevented from doing so by the the Miller/21st Century Group's non-performance. Marnix Verkruisen and David Holland, acting on behalf of Verkruisen Trading, later directed correspondence to plaintiff and the Miller/21st Century Group from both their Dutch offices

and an office in Roanoke, Virginia. These two individuals also appear to have traveled to the United States on several occasions to conduct business directly related to the roll programs.[2] While Verkruisen and Holland claim they were merely attempting to resolve a dispute with the Miller/21st Century Group over the $100 million line of credit agreement, plaintiff insists that any "dispute" was nothing more than a ruse designed to prevent plaintiff from learning of the conspiracy between the defendants.

In April 1996, plaintiff sought from officials at Verkruisen Trading an accounting of its $3.5 million investment and, later, the return of all its funds. No company representative complied with plaintiff's requests. Verkruisen Trading claimed that the Miller/21st Century Group's intransigence had created delays but that the investment program would operate smoothly once the difficulties were resolved. In July 1996, Joseph Herlihy, supposedly responding to various letters from Verkruisen Trading, wrote plaintiff and stated for the first time that plaintiff's investment would not be returned. This lawsuit ensued.

## II. Standards

■ A party seeking to invoke the jurisdiction of a federal court must demonstrate that the case rests within the court's jurisdiction. *United States v. Bustillos*, 31 F.3d 931, 933 (10th Cir.1994). The burden of proof on this issue depends on whether the defendant raises a facial or factual attack.

■ A *facial* attack questions the sufficiency of the allegations in the complaint as they relate to subject-matter jurisdiction. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir.1995). In reviewing a facial attack on the complaint, the court must accept all allegations in the complaint as true. *Id.* A *factual* attack, which defendants mount here, challenges the underlying facts in the complaint upon which plaintiff has predicated

---

1. The contract stated that Verkruisen Trading was represented by its managing directors—Marnix Verkruisen and David Holland. In addition, the signatories to the agreement included Christian Heysse and David Dawes.

2. Verkruisen and Holland deny traveling to the United States to work on any matters pertaining to the roll programs. The extensive documentary evidence that plaintiff offers in its response, however, creates at least a genuine issue of material fact on this point. (*See* Pls.' Resp. at 5–6 and accompanying exhibits).

subject-matter jurisdiction. *Id.* at 1003. In examining a factual attack on its subject-matter jurisdiction, the court may not presume the truthfulness of allegations in the complaint. *Id.* The court has broad discretion, however, to allow affidavits, other documents, and a limited evidentiary hearing to resolve any disputed jurisdictional facts. *Id.* Unless resolution of the jurisdictional issues is intertwined with the merits of the case, the reference to such evidence outside the pleadings does not convert the motion to dismiss into a motion for summary judgment. *Id.* In this case, although many facts undergirding the jurisdictional issues are relevant to the merits, they are not so inextricably linked to compel a conversion of defendants' motion. The court, therefore, will analyze defendants' pleading under Fed.R.Civ.P. 12(b)(1)-(2).

█ If, as here, the court does not resort to an evidentiary hearing but decides defendants' motion to dismiss for lack of jurisdiction solely on the basis of affidavits and other written materials, the plaintiff need only make a prima facie showing of jurisdiction. *Oaklawn Apartments,* 959 F.2d at 174. "The 'well pled facts' of the complaint must be accepted as true if uncontroverted by the defendant's affidavits [or other written materials], and factual disputes at this initial stage must be resolved in the plaintiff's favor when the parties present conflicting" evidentiary materials. *Id.* (citations omitted).

### III. Discussion

The three defendants who submitted the motion now before the court—Marnix Verkruisen, Verkruisen Trading, and Christian Heysse (whom the court will refer to collectively as the "Verkruisen defendants")—aver that the court lacks subject-matter jurisdiction over plaintiff's securities fraud and RICO claims. These defendants further argue that the court cannot exercise personal jurisdiction over them on plaintiff's pendent state law causes of action in the absence of the federal anchor claims. The court will address each argument in turn.

### A. Securities Fraud Claim

Section 27 of the 1934 Act, 15 U.S.C. § 78aa, vests federal courts with exclusive jurisdiction over actions involving violations of the Act as well as the rules and regulations adopted thereunder. Plaintiff alleges that defendants have contravened both section 10(b) of the 1934 Act, 15 U.S.C. § 78j(b), and Securities and Exchange Commission Rule 10b–5, 17 C.F.R. § 240.10b–5. Each provision proscribes manipulative and deceptive conduct in securities transactions "by the use of any means or instrumentality of interstate commerce." Although the preamble to the 1934 Act expressly contemplates its application to transactions in "interstate and foreign commerce," 44 Stat. 881 (1934), thereby suggesting Congress intended a broad jurisdictional scope, *see Securities & Exch. Comm'n v. Kasser,* 548 F.2d 109, 114 & n. 21 (3d Cir.1977), the specific provisions of the statute itself are silent with respect to its extraterritorial reach. *See Alfadda v. Fenn,* 935 F.2d 475, 478 (2d Cir.1991).

█ In the absence of any statutory guidance, courts assessing whether the 1934 Act permits them to exercise jurisdiction over transnational securities fraud have invoked one of two alternative judicially-created tests: the "conduct test," which essentially questions whether the fraudulent acts forming the alleged violation occurred in the United States, and the "effects test," which examines whether conduct outside the United States has had a substantial adverse effect on American investors or securities markets. *Robinson v. TCI/US West Communications,* 117 F.3d 900, 905 (5th Cir.1997). The satisfaction of either test is sufficient to confer subject-matter jurisdiction on the court. *Id.; Alfadda,* 935 F.2d at 478; *Continental Grain (Australia) Pty., Ltd. v. Pacific Oilseeds, Inc.,* 592 F.2d 409, 420 (8th Cir.1979).

█ Plaintiff predicates its 1934 Act jurisdictional arguments solely on the "conduct test" and the court will do likewise. The courts of appeals have not spoken with unanimity on the type of activities required to meet the conduct test. The Second, Fifth, and District of Columbia Circuits mandate that the domestic conduct be "of material importance" to, or "have directly caused" the alleged fraud. *Robinson,* 117·F.3d at 905–06 (citations omitted). The Third, Eighth, and Ninth Circuits require only that the domestic conduct be significant to the fraud rather than a direct cause of it. *Id.* at 906 (citations

omitted). Yet all agree that the test "is based on the idea that Congress did not want the United States to be used as a base for manufacturing fraudulent security devices for export, even when these are peddled only to foreigners." *Id.* at 905 (citing *IIT v. Vencap, Ltd.,* 519 F.2d 1001, 1017 (2d Cir. 1975)); *Pacific Oilseeds,* 592 F.2d at 420; *Kasser,* 548 F.2d at 114. The Tenth Circuit has not visited this issue and this court need not stake out any particular terrain on the matter. Even under the more restrictive "material importance" conduct test, plaintiff has both alleged uncontroverted facts and advanced competent evidence sufficient to make out a prima facie case of subject-matter jurisdiction.

The more restrictive test authorizes a court to entertain lawsuits initiated by noncitizens who have lost money through sales abroad only if: "(1) the defendant's activities in the United States were more than 'merely preparatory' to a securities fraud conducted elsewhere, and (2) [those] activities or failures to act within the United States 'directly caused' the claimed losses." *Itoba Ltd. v. Lep Group PLC,* 54 F.3d 118, 121 (2d Cir. 1995) (internal and external citations omitted). Thus, "foreign plaintiffs' suits under anti-fraud provisions of the securities laws [will] be heard only when substantial acts in furtherance of the fraud were committed within the United States." *Psimenos v. E.F. Hutton & Co.,* 722 F.2d 1041, 1045 (2d Cir. 1983).

The court finds ample evidence, all of which must be construed in a light most favorable to the plaintiff, to support a prima facie case of jurisdiction. The record is replete with documents suggesting that the Verkruisen defendants engaged in significant conduct in this country which, at a minimum, directly facilitated the 21st Century defendants' alleged fraud. The Verkruisen defendants represented to plaintiff in 1994 and 1995 that the Federal Reserve Board had authorized, and continued to supervise, investment programs virtually identical to their own roll programs. In fact, as plaintiff has demonstrated unequivocally, no legitimate roll programs exist. The Verkruisen defendants then transferred nearly $2.975 million of plaintiff's funds, using United States banking facilities, into a New York bank account for the alleged purpose of furthering their financial conspiracy with the 21st Century defendants. Over the next fifteen months, the Verkruisen defendants traveled to the United States and employed this country's mail and wires to exchange correspondence with the 21st Century defendants in an alleged attempt to make it appear as if the parties had a genuine dispute over their line of credit agreement.[3] All of this conduct was of material importance to the defendants' fraudulent scheme and had a substantial effect on interstate commerce.

Recent case law bolsters the court's analysis. In *Robinson,* 117 F.3d at 907, the Fifth Circuit held that a single mailing from the United States to England was sufficient to confer subject-matter jurisdiction on the court when the letter represented one of the key events in the alleged scheme to defraud. The court noted that the "letter was more than merely preparatory—it directly triggered the injury of which [the plaintiff] now complains." *Id.* Similarly, the Second Circuit found jurisdiction proper in *Alfadda* based on the fact that a group of foreign defendants, prior to selling securities offshore, conducted negotiations here in the United States. 935 F.2d at 477–79. The only case the Verkruisen defendants cite in support of their position is *Butte Mining PLC v. Smith,* 76 F.3d 287 (9th Cir.1996). The Ninth Circuit made clear there, however, that the allegations in the complaint involving conduct in the United States played no substantial role in the underlying fraud. *Id.* at 290–91.[4]

Through a series of affidavits, the Verkruisen defendants contend that the court lacks subject-matter jurisdiction because any ille-

---

3. The fact that the Verkruisen defendants knowingly peddled a fraudulent investment program to plaintiff is sufficient to permit the court to infer that their actions in the United States were designed, in part, to further the alleged conspiracy with the 21st Century defendants.

4. All of these cases are of limited precedential value. Issues of federal jurisdiction in transnational securities actions are highly fact specific and the presence or absence of any particular factor considered significant in another case is not dispositive here. *See Pacific Oilseeds,* 592 F.2d at 414.

gal acts they may have committed occurred outside the United States. They insist that all of their contacts with the United States flowed from legitimate transactions. Specifically, Marnix Verkruisen and Christian Heysse maintain that they transferred plaintiff's funds into a New York bank account pursuant to a contract with the 21st Century defendants negotiated and executed overseas. They further claim that their contacts with the 21st Century defendants in this country revolved around bona fide business disputes.

The Verkruisen defendants' arguments cannot carry the day at this point in the proceedings. As noted earlier, plaintiff need only make a prima facie showing of jurisdiction in response to a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1). Defendants' explanations for their conduct, although relevant at the summary judgment and trial stages, are not germane here. Moreover, even if those views were relevant, the court agrees with plaintiff that because the Verkruisen defendants' dealings with Mr. Herlihy were part of a larger conspiracy to defraud, it is no defense on their part to assert that the contracts with plaintiff and the Miller/21st Century Group were discrete and unrelated events. (Pl.'s Resp. at 26). Having advanced numerous documents in its responsive pleadings which allow the court to infer that the Verkruisen defendants' conduct is consistent with prime bank investment fraud, plaintiff has satisfied its prima facie burden. The court, therefore, finds that it has subject-matter jurisdiction over plaintiff's securities fraud claim.

### B. RICO Claims

■ Plaintiff also avers that defendants engaged in a pattern of racketeering activity in violation of RICO. Like the 1934 Act, RICO offers little statutory insight into its extraterritorial application. The statute states only that it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs

through a pattern of racketeering activity." 18 U.S.C. § 1962(c). Courts generally invoke the same jurisdictional test for RICO claims that they employ in securities fraud cases. *See, e.g., North S. Fin. Corp. v. Al-Turki,* 100 F.3d 1046, 1051–53 (2d Cir.1996); *Alfadda,* 935 F.2d at 479. Although the Second Circuit recently observed that the broad jurisdictional presumptions often utilized in securities fraud cases are not necessarily applicable to RICO suits, *see Al-Turki,* 100 F.3d at 1052, this court believes there is adequate evidence to warrant the assertion of subject-matter jurisdiction over plaintiff's RICO claim.

Because "the heart of any RICO complaint is the allegation of a pattern of racketeering activity," the requisite "predicate acts" of the RICO statute often arise in a variety of different locations. *Agency Holding Corp. v. Malley–Duff & Assocs., Inc.,* 483 U.S. 143, 154, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987). Plaintiff relies on the same evidence in support of its RICO claim as it used for its securities fraud claim. Drawing all inferences and viewing all evidence in favor of plaintiff, the record is sufficient to support plaintiff's prima facie case that the Verkruisen defendants engaged in a pattern of racketeering by, *inter alia,* using United States mails and wires to defraud plaintiff and subsequently transferring those fraudulently obtained funds through financial transactions affecting interstate commerce. Accordingly, the court concludes that it has subject-matter jurisdiction over plaintiff's RICO claim.

### C. Supplemental State Law Claims

■ The Verkruisen defendants next challenge the court's exercise of personal jurisdiction over them on plaintiff's supplemental state law claims.[5] Plaintiff responds that the Verkruisen defendants waived this defense by asserting permissive cross-claims against the 21st Century defendants in their original answer. *See* Fed.R.Civ.P. 12(h)(1). Although there is case law to support plaintiff's argument, *see Hasse v. American Photograph Corp.,* 299 F.2d 666, 668–69 (10th Cir.1962), "the trend in more recent cases is to hold that no Rule 12(b) defense is waived

---

**5.** The Verkruisen defendants do not object to the court's personal jurisdiction *vis-à-vis* plaintiff's federal claims; they object only to subject-matter

jurisdiction as to the federal claims. (Defs.' Reply at 10 n. 5).

by the assertion of a counterclaim, whether permissive or compulsory." 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1397 (2d ed.1990); *see also Campbell v. Bartlett,* 975 F.2d 1569, 1574 n. 8 (10th Cir.1992); *Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Coop.,* 812 F.Supp. 1139, 1149 (D.Kan.1993), *aff'd,* 17 F.3d 1302 (10th Cir.1994).[6] The court joins this modern trend and holds that the Verkruisen defendants did not waive their right to assert a motion to dismiss for lack of personal jurisdiction.

[redacted] Plaintiff's second response is that the court has supplemental personal jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a). Defendants do not dispute this argument.[7] Despite the general agreement between the parties, this issue is not so simple. Some commentators speculate that the congressional codification of pendent and ancillary jurisdiction in § 1367 precludes courts from predicating *personal* jurisdiction over supplemental claims exclusively on the existence of *personal* jurisdiction over a federal anchor claim. *See, e.g.,* 4A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1125 (2d ed. Supp.1998). Insisting that § 1367 applies only to subject-matter jurisdiction, Wright and Miller contend that if a court has personal jurisdiction over a defendant based solely on a federal statute's nationwide service of process provision, subjecting that defendant to jurisdiction on pendent claims despite its lack of minimum contacts with the forum contravenes the Due Process Clause of the Fourteenth Amendment. *Id.*

Although this narrow interpretation of § 1367 has some appeal, every circuit court confronting the issue has rejected the commentators' analysis and upheld the principle of pendent personal jurisdiction. *See ESAB Group, Inc. v. Centricut, Inc.,* 126 F.3d 617, 628–29 (4th Cir.1997), *cert. denied,* — U.S. —, 118 S.Ct. 1364, 140 L.Ed.2d 513 (1998); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1052 n. 2, 1056–57 (2d Cir.1993). As the Fourth Circuit held:

> When a federal statute authorizes a federal district court to exercise personal jurisdiction over a defendant beyond the borders of the district and the defendant is effectively brought before the court, we can find little reason not to authorize the court to adjudicate a state claim properly within the court's subject-matter jurisdiction so long as the facts of the federal and state claims arise from a common nucleus of operative fact. The defendant will have to adjudicate the facts of the federal claim, and it could impose only a minimal burden to require the defendant to provide a defense on the factually-related state claim. We agree with the observation that judicial economy and convenience of the parties is best facilitated by a consideration of all legal theories arising from a single set of operative facts.

*ESAB Group,* 126 F.3d at 628 (citation omitted). Finding this reasoning persuasive, the court follows the holdings of the Second and Fourth Circuits and concludes that the exercise of personal jurisdiction over the Verkruisen defendants is appropriate on plaintiff's state law claims.[8]

IT IS, THEREFORE, BY THE COURT ORDERED that the motion (Doc. 77) of defendants Verkruisen Trading, Marnix Verkruisen, and Christian Heysse to dismiss for lack of subject-matter and personal jurisdiction is denied.

Copies of this order shall be mailed to counsel of record for the parties.

**IT IS SO ORDERED.**

[redacted]

6. Contrary to plaintiff's representation, the dicta from *Hasse* does not control here. To the extent it once had persuasive value, its importance has been minimized by the Tenth Circuit's dicta in *Campbell* as well as the circuit's affirmation of *Federated Rural Elec. Ins. Corp.*

7. The Verkruisen defendants' only argument is that the court has no subject-matter jurisdiction over the federal securities fraud and RICO claims and thus cannot assert supplemental jurisdiction over any state law claims.

8. Even if the court rejected the notion of pendent personal jurisdiction, the evidence, viewed in a light most favorable to plaintiff, is sufficient to state a prima facie case of personal jurisdiction based on the Verkruisen defendants' minimum contacts with this forum.