RUBINBAUM LLP, Plaintiff,

v.

RELATED CORPORATE PARTNERS V, L.P., Related Corporate SLP, L.P., the Brannon Group, L.C., D. Reid Brannon and Ivan I. Brannon, Defendants.

No. 00 CIV 2715 JGK.

United States District Court, S.D. New York.

Feb. 16, 2001.

## OPINION AND ORDER

KOELTL, District Judge.

The plaintiff, RubinBaum LLP ("RubinBaum"), brings this statutory interpleader action pursuant to 28 U.S.C. § 1335. RubinBaum has met the requirements of 28 U.S.C. § 1335(a)(2) by depositing $906,963.56 (the "Funds") it held as an escrow agent with the registry of the Court.[1] As required by 28 U.S.C. § 1335(a)(1), the Funds are allegedly subject to adverse claims by Related Corporate Partners V, L.P. ("Related V") and Related Corporate SLP, L.P. ("Related SLP") (collectively the "Related Defendants"); the Brannon Group, L.C. (the "Company"); and D. Reid Brannon and Ivan I. Brannon (the "Brannons"). The Related Defendants have filed cross-claims based on Florida common law against the Company and the Brannons alleging claims for breach of fiduciary duties, breach of contract, accounting, and declaratory judgment. The Brannons move to dismiss the interpleader action and cross-claims against them pursuant to Fed. R.Civ.P. 12(b).[2] The Company and the Brannons move to transfer the case to the

---

1. On June 20, 2000, the Court signed a stipulation and order for disbursement of $700,632.60 of the Funds to pay HSBC Bank USA for a loan made in connection with the real estate development project related to this action. Therefore, a balance of $206,330.96 plus any accrued interest remains on deposit.

2. While the Brannons have not explicitly cited the section of Rule 12(b) on which they rely, they argue that there is no personal jurisdiction over them, which would be a defense under Rule 12(b)(2), and that venue is improper, which would be a defense under Rule 12(b)(3).

Southern District of Florida pursuant to 28 U.S.C. § 1404(a) or 28 U .S.C. § 1406(a).

The Brannons argue that the statutory interpleader action should be dismissed with respect to them because they are not "claimants" of the Funds. The gist of the argument is that if they are not "claimants," then they are not subject to 28 U.S.C. § 2361, which provides for nationwide service of process for statutory interpleader actions. In the alternative, the Brannons move to dismiss the Related Defendants' cross-claims for lack of personal jurisdiction. They argue that the Court does not have personal jurisdiction over them with respect to the cross-claims because 28 U .S.C. § 2361 only establishes personal jurisdiction for the statutory interpleader claim and not for the cross-claims. The Brannons also argue that they do not have sufficient contacts with New York for the New York long arm statute to be an independent basis of personal jurisdiction for the cross-claims and that the exercise of personal jurisdiction over them would violate their right to due process because they have insufficient minimum contacts with New York. Finally, the Company and the Brannons advance a number of reasons why the entire case or at least the cross-claims should be transferred to the Southern District of Florida.

### I.

This case arises out of various agreements entered into by the Related Defendants, the Company, and the Brannons concerning the Related Defendants' investment in an affordable housing project. The Related Defendants are limited partnerships organized under the laws of Delaware and have their principal places of business in New York City. (Compl.¶¶ 5, 6.) The Related Defendants are all affiliated with Related Capital Company, which maintains its principal place of business in New York City, and with other Related Companies (collectively "Related"). (Declaration of D. Reid Brannon dated June 2, 2000 ("R. Brannon Decl.") at ¶ 15; Declaration of Eric Trucksess dated July 7, 2000 ("Trucksess Decl.") at ¶ 1.) Related invests in limited liability companies that own affordable housing projects, which qualify for certain federal tax credits. (R. Brannon Decl. ¶ 15.) The Company is a limited liability company organized under the laws of Florida with its principal place of business in Florida. (Compl.¶ 7.) The Company owns the Keys Apartments (the "Project"), which are located in Leisure City, Florida. (Compl.¶ 10.) The Brannons are officers and managers of the Company, are residents of Florida, and manage the Project. (Compl. ¶¶ 8–9; R. Brannon Decl. ¶ 2.)

In 1995, Related invested in Phases 1 and 2 of the Project. (R. Brannon Decl. ¶ 16.) In 1996, Related agreed to invest in Phase 3 of the Project through the Related Defendants. (Id.) The Related Defendants, the Company, the Brannons, and others negotiated and executed the Second Amended and Restated Regulations dated December 1, 1997 (the "Regulations"), which set forth the terms and conditions by which Related would invest in the Project. (Compl.¶ 10.) Various combinations of these parties also agreed to a number of other agreements setting forth the terms and conditions of that investment and arranging financing for the Project. (Compl. ¶ 10; R. Brannon Decl. ¶¶ 17–21.) Under the Regulations, Related V was required to make capital contributions of $2,467,394 to Phase III of the Project payable in three installments. (Compl. ¶ 11; R. Brannon Decl. ¶ 18.) The initial installment was to be $1,287,394, and the second and third installments were to be $708,000 and $472,000. (Id.)

Pursuant to the Regulations, the Related Defendants and the Company entered into an escrow agreement dated December 1, 1997 (the "Escrow Agreement"). (Compl.¶ 12.) Under the Escrow Agreement, Related V was to deposit $1,180,000 (the "Funds"), an amount equal to the last two installments, into an escrow account with RubinBaum as the escrow agent. (Compl.¶ 13.) RubinBaum is a New York limited liability partnership that practices law in the State of New York with its principal place of business in New York City and is the successor in interest to Rubin Baum Levin Constant & Friedman. (Compl.¶ 4.) RubinBaum was to release the Funds to the Company in accordance with a schedule unless RubinBaum was advised that certain "Release Conditions" had occurred in which case the Funds were to be returned to Related V absent an objection by the Company. (Compl.¶¶ 14–16.) According to the Escrow Agreement:

> the term "Release Condition" shall mean (i) at any time prior to Rental Achievement (A) a default has occurred under any of the Project Documents and is continuing, (B) any of the Managers is in material default in any of its obligations under the Regulations, or (C) a Bankruptcy of a Manager has occurred and is continuing, or (ii) Rental Achievement has not occurred within two years after the date when Completion occurs.

(Compl., Ex. A, ¶ 3(c).) Many of the terms in the Escrow Agreement are defined in the Regulations. (*Id.* at p. 1.) Finally, the Escrow Agreement provides that any lawsuits arising from disputes concerning the escrow account are to be resolved in New York courts pursuant to New York law. (Compl., Ex. A, ¶¶ 17, 19.)

Related paid the first installment and deposited an amount equal to the second and third installments into the escrow account. (R. Brannon Decl. ¶ 18.) However, the Related Defendants have refused to allow the release of the second and third installments because they claim that certain conditions of "Completion" have not been satisfied. (R. Brannon Decl. ¶ 25.) In March and September of 1999, Related V made two partial payments of the Second Installment totaling $405,000 as an accommodation to the Company. (R. Brannon Decl. ¶ 25.) On March 29, 2000, Related V notified RubinBaum that a Release Condition had been satisfied and requested the return of the Funds. (Compl., Ex. B; R. Brannon Decl. ¶ 26.) On April 3, 2000, the Company notified RubinBaum that it objected to the return of the Funds to Related V. The Company disputed the assertion that any "Release Condition" had occurred and the Company requested that the Funds be delivered to the Company because it had fulfilled its obligations. (Compl., Ex. C; R. Brannon Decl. ¶ 27.) The Company stated that it had certified in 1999 that "Completion" and "Rental Achievement" had occurred and again so certified. The Company also stated "that Rubin Baum acted improperly by not delivering the 'Funds' to the 'Company' within the specified time period." (Compl., Ex. C.)

## II.

The Brannons argue that the interpleader action against them should be dismissed for lack of personal jurisdiction because they are not "claimants" subject to 28 U.S.C. § 2361.[3] Section 2361 provides that district courts may issue process in statutory interpleader actions for all

**3.** Reid Brannon had moved to dismiss on the additional ground that the method of service on him was improper. This motion was withdrawn at argument and there are no contentions that the service on the Brannons was improper.

"claimants" nationwide. Fed.R.Civ.P. 4(k)(1)(C) provides that service in a federal interpleader action is sufficient to establish personal jurisdiction over the served defendant. The Brannons contend that they are not "claimants" because they are not parties to the Escrow Agreement and have no claim to the Funds. RubinBaum replies that the Brannons are "claimants" because they are entitled to a development fee from the Related Defendants' capital contribution and have an indirect claim to the Funds.

## A.

A district court has "broad discretion" in deciding how to proceed with a motion to dismiss for lack of personal jurisdiction and has the discretion to conduct an evidentiary hearing. *See CutCo Indus., Inc. v. Naughton,* 806 F.2d 361, 364 (2d Cir. 1986); *APC Commodity Corp. v. Ram Dis Ticaret A.S.,* 965 F.Supp. 461, 464 (S.D.N.Y.1997). Because there has not been an evidentiary hearing in this case, the plaintiff need only make a prima facie showing of personal jurisdiction over the defendant to survive a motion to dismiss, and the pleadings and any supporting affidavits are to be interpreted in the light most favorable to the plaintiff. *See PDK Labs, Inc. v. Friedlander,* 103 F.3d 1105, 1108 (2d Cir.1997); *A.I. Trade Finance, Inc. v. Petra Bank,* 989 F.2d 76, 79–80 (2d Cir.1993).

## B.

The purpose of a statutory interpleader action is to avoid the problem of multiple, conflicting claims to a single fund by forcing all "claimants" to resolve their claims in one action. *See, e.g., State Farm Fire & Casualty Co. v. Tashire,* 386 U.S. 523, 530, 87 S.Ct. 1199, 18 L.Ed.2d 270 (1967); *Ashton v. Josephine Bay Paul and C. Michael Paul Found. ., Inc.,* 918 F.2d

1065, 1068 (2d Cir.1990). In order to bring a statutory interpleader action, the plaintiff must establish that there are "[t]wo or more adverse claimants, of diverse citizenship ... [who] are claiming or may claim to be entitled to such money or property...." 28 U.S.C. § 1335(a)(1).

The statutory interpleader remedy is not limited to cases where there are actual competing claims. The United States Supreme Court has held that "claimants" include individuals with potential claims because the text of section 1335 includes those who "may claim" the interpleaded money or property. *See State Farm Fire & Casualty Co.,* 386 U.S. at 531–33, 87 S.Ct. 1199; *see also Ashton,* 918 F.2d at 1068 n. 2; *Minnesota Mut. Life Ins. Co. v. Ensley,* 174 F.3d 977, 980 (9th Cir.1999). The mere threat of future litigation is sufficient for a plaintiff to invoke the statutory interpleader remedy. *See, e.g., Dunbar v. United States,* 502 F.2d 506, 511 (5th Cir.1974); *Viewhaven, Inc. v. Danon,* No. 85 Civ. 9603, 1986 WL 6779, at *2 (S.D.N.Y. June 12, 1986). A potential claimant need not have filed an actual claim to be considered a claimant. *See, e.g., Ashton,* 918 F.2d at 1068 n. 2; *Dunbar,* 502 F.2d at 511. The availability of statutory interpleader does not depend on the merit of the underlying claims. *See, e.g. Viewhaven, Inc.,* 1986 WL 6779, at *2; *Bankers Trust Co. of Western New York v. Crawford,* 559 F.Supp. 1359, 1361 (W.D.N.Y.1983).

However, a plaintiff has the burden to demonstrate the existence of adverse claimants. *See, e.g., Dunbar,* 502 F.2d at 511. A plaintiff is not entitled to the statutory interpleader remedy if the assertion that there are two or more adverse claimants is utterly baseless and made without good faith. *See, e.g., Indianapolis Colts v. Mayor and City Council of Baltimore,* 733 F.2d 484, 486–87 (7th Cir.1984); *Viewha-*

*ven, Inc.*, 1986 WL 6779, at *3; *Stuyvesant Ins. Co. v. Dean Constr. Co., Inc.*, 254 F.Supp. 102, 108 (S.D.N.Y.1966), *aff'd sub nom., Stuyvesant Ins. Co. v. Kelly*, 382 F.2d 991 (2d Cir.1967).

■ The Brannons are "claimants" for the purposes of 28 U.S.C. § 1335 and 28 U.S.C. § 2361 because they are potential claimants of the Funds. While the Brannons are not parties to the Escrow Agreement (Compl.¶¶ 21, 22), they may be entitled to a portion of the Funds that were held in escrow by Rubinbaum. The Regulations provide:

6.1 *Development Fee.*

A. As consideration for the services of the Developer [the Brannons] to the Company with respect to Phase 3, the Company shall pay the Developer a Development Fee of $800,931. Such fee shall be paid solely out of available proceeds from the New Investor Member's Capital Contribution after payment of the amount specified in Section 6.3 hereof, and otherwise as provided herein.

(Trucksess Decl., Ex. A, at 38.) New Investor Member is defined in the Regulations as Related V. (*Id.* at 10.) The Brannons have a direct interest in assuring that the Funds are paid to the Company and not returned to Related V because they have a direct claim on those very Funds from the Company. If the Funds were wrongfully paid to Related V, the Brannons may have a claim against RubinBaum for having paid those funds to the wrong party. The fact that the Brannons are not parties to the Escrow Agreement and only have potential claims does not make them any less claimants because they may claim a portion of the Funds and that is sufficient to make them claimants. *See State Farm Fire & Casualty Co.*, 386 U.S. at 528, 531–32, 87 S.Ct. 1199.

The Brannons argue that if they are "claimants" then all creditors of the Company are "claimants." However, the Regulations provide that the Brannons' fee is to come solely out of Related V's capital contribution. Thus, they have a direct claim against Related V's capital contribution, which is the source of the Funds. The Brannons are not just general creditors of the Company but have a particular claim to the Funds.[4]

If the Brannons truly had no claim or interest in the Funds, then they could avoid involvement in the interpleader litigation by disavowing any claim to the Funds and agreeing to discharge RubinBaum from any liability with respect to the Funds. *Cf., Algemene Bank Nederland, N.V. v. Soysen Tarim Urunleri Dis Ticaret Ve Sanayi*, 748 F.Supp. 177, 180 (S.D.N.Y.1990) (noting that interpleader plaintiff should receive discharge when it asserts no right to the interpleader funds and no claim against any of the defendants other than the interpleader action). Then,

---

4. The Brannons point to § 6.1(B) of the Regulations to argue that they have no particular claim to the Funds. Under § 6.1(B), "any portion of the Development Fee which cannot be paid as provided in Section 6.1.A hereof shall be payable by the Company as provided in this Section 6.1.B." But § 6.1(B) provides a far more speculative means for payment of the Development Fee. Under § 6.1(B) the Development Fee is only payable 15 years after the Project is placed in service and shall be payable prior to maturity only out of Cash Flow, which means that the Development Fee could only be paid under that section after all of the operating expenses and certain other expenses were paid. That is a far more contingent claim than the Brannons would have to the payment of their Development Fee under § 6.1(A). The Regulations give the Brannons an incentive to assure that the Funds are released to the Company and that the Development Fee is paid from the Fund so that the Brannons are not relegated to seek their Fee from any money left after all the operating expenses are paid.

it would be clear that they were not "claimants" and that RubinBaum should be discharged from any potential claim by them over the payment of the Fund. However, in their papers the Brannons studiously avoided any definitive statement that they had no claim to the Funds and, while they went further at oral argument, they were unwilling to agree that RubinBaum should be released from any liability in connection with the disbursement of the Funds. Moreover, the Company has asserted that RubinBaum has already acted improperly by not delivering the Funds to the Company.

The Brannons incorrectly attempt to have the best of all worlds. They avoid explicitly waiving their interest in the Funds while arguing that the Court does not have power to issue process to assert personal jurisdiction over them pursuant to 28 U.S.C. § 2361 and to discharge RubinBaum from any claims they may have against the Funds. The Brannons cannot maintain this inconsistent position. The Brannons are "claimants" of the Funds for the purposes of 28 U.S.C. §§ 1335 and 2361.

### III.

The Brannons next move to dismiss the cross-claims brought against them by the Related Defendants on the grounds that the Court has no personal jurisdiction over the cross-claims. The Brannons argue that because personal jurisdiction over them is solely predicated on the nationwide service of process authorized by 28 U.S .C. § 2361, and they are not subject to personal jurisdiction pursuant to the New York long arm statute, the Court only has personal jurisdiction over the Brannons with respect to the federal statutory interpleader action. The Related defendants contend that this Court may assert supplemental jurisdiction over the cross-claims

pursuant to 28 U.S.C. § 1367 and, alternatively, that the Brannons are subject to personal jurisdiction under the New York long arm statute.

### A.

██ Because the Court has personal jurisdiction over the Brannons based on the service of process on them authorized by the nationwide service of process provision under the interpleader statute, the Court also has supplemental personal jurisdiction over them for any state claims arising out of the same common nucleus of operative facts that are at issue in the interpleader action. As the Court of Appeals for the Second Circuit explained: "[U]nder the doctrine of pendent personal jurisdiction, where a federal statute authorizes nationwide service of process, and the federal and state claims derive from a common nucleus of operative fact, the district court may assert personal jurisdiction over the parties to the related state law claims even if personal jurisdiction is not otherwise available." *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1056 (2d Cir.1993) (citations and internal quotation omitted) (finding personal jurisdiction over state law claims against defendants where the district court had personal jurisdiction over those defendants under the Multiemployer Pension Plan Amendments Act).

In this case, counsel for the Brannons conceded at oral argument that the cross-claims arise out of the same common nucleus of operative fact as the interpleader action, and indeed they do. Both the conflicting claims to the Funds which are the subject of the interpleader action and the cross-claims arise out of the completion of the Project and the charges and counter charges over the state of completion of the Project and who is responsible for any shortcomings.

With the enactment of 28 U.S.C. § 1367, Congress codified the doctrine of pendent and ancillary jurisdiction under the collective doctrine "supplemental jurisdiction." *See City of Chicago v. International College of Surgeons*, 522 U.S. 156, 164–65, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997); *Itar–Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 445–46 (2d Cir.1998); 4A Wright and Miller, Federal Practice and Procedure § 1125 at p. 81 (1999 Supp.). Under § 1367(a), "the district courts shall have supplemental jurisdiction over all claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve joinder or intervention of additional parties." In *IUE AFL–CIO Pension Fund*, the Court of Appeals for the Second Circuit did not rely upon supplemental jurisdiction under § 1367 because the complaint in that action was filed prior to December 1, 1990, the effective date of § 1367. *IUE AFL–CIO Pension Fund*, 9 F.3d at 1052 n. 2. Nevertheless, the Court of Appeals concluded that "an analysis under section 1367(a) would not alter our analysis." *Id.* Given the explicit statement of the Court of Appeals in *IUE AFL–CIO* that § 1367(a) does not alter the analysis of pendent personal jurisdiction, which the Court of Appeals found to exist in that case, it is plain that supplemental personal jurisdiction under § 1367(a) is an available basis of personal jurisdiction over a defendant who has been properly served pursuant to nationwide service of process authorized by a federal statute.

After the decision in *IUE AFL–CIO*, courts have almost uniformly found that when a federal statute authorizes nationwide service of process, there is supplemental personal jurisdiction for related state law claims, although courts often continue to refer to the doctrine as pendent personal jurisdiction and frequently do not rely explicitly on § 1367(a). *See, e.g., Robinson Eng'g Co., Ltd. Pension Plan and Trust v. George*, 223 F.3d 445, 450 (7th Cir.2000) ("... the same logic that lies behind the supplemental jurisdiction statute for purposes of subject matter jurisdiction, 28 U.S.C. § 1367, supports the application of supplemental personal jurisdiction over claims that are properly before the Court under § 1367."); *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 628 (4th Cir.1997); *see also Hudson Venture Partners, L.P. v. Patriot Aviation Group, Inc.*, No. 98 Civ. 4132, 1999 WL 76803, at *5 (S.D.N.Y. Feb. 17, 1999); *Mates v. North American Vaccine, Inc.*, 53 F.Supp.2d 814, 821 (D.Md.1999); *Sadighi v. Daghighfekr*, 36 F.Supp.2d 267, 274–75 (D.S.C.1999); *Iron Workers Local Union No. 17 Ins. Fund v. Philip Morris, Inc.*, 23 F.Supp.2d 796, 804–05 (N.D.Ohio 1998); *Starlight Inter., Inc. v. Herlihy*, 13 F.Supp.2d 1178, 1185 (D.Kan.1998); *Miller Pipeline Corp. v. British Gas*, 901 F.Supp. 1416, 1423–24 (S.D.Ind.1995).[5]

While most cases concerning supplemental personal jurisdiction have involved other federal statutes such as the federal securities laws, this Court has exercised personal jurisdiction over parties for cross-claims in a statutory interpleader case where the cross-claims were closely related to the claims at issue in the interpleader action. *See Priority Records,*

---

**5.** Even prior to the adoption of § 1367, some courts had recognized the existence of pendent personal jurisdiction for state law claims against defendants who had been brought before the court pursuant to nationwide service of process authorized for a federal claim. *See Oetiker v. Werke*, 556 F.2d 1, 4–5 (D.C.Cir. 1977); *Robinson v. Penn Central Co.*, 484 F.2d 553, 555–56 (3d Cir.1973).

Inc. v. Bridgeport Music, Inc., 907 F.Supp. 725, 729–32 (S.D.N.Y.1995); see also First Tenn. Nat'l Bank, Chattanooga v. Federal Deposit Ins. Corp., 421 F.Supp. 35, 38–39 (E.D.Tenn.1976). There is nothing about the interpleader statute that would preclude the application of supplemental personal jurisdiction in statutory interpleader actions. As one commentator explained before the enactment of § 1367: "[A]n inflexible rule prohibiting the assertion of cross-claims in actions under the act ignores the desirability of adjudicating these claims in conjunction with the interpleader in a single action when they are closely related to the original dispute over the stake. Indeed, this is precisely the type of situation that has motivated the federal courts to develop the doctrines of ancillary and pendent jurisdiction.... Certainly nothing in the statute itself prohibits employing what in effect is a notion of ancillary personal jurisdiction." 7 Wright, Miller, & Kane, Federal Practice and Procedure § 1715 at p. 598 (1986).[6]

The courts that have dismissed cross-claims in statutory interpleader cases for lack of personal jurisdiction did so for the most part prior to the more recent decisions in this circuit and elsewhere confirming the existence of supplemental personal jurisdiction. See, e.g., Hagan v. Central Ave. Dairy, Inc., 180 F.2d 502, 503–04 (9th

Cir.1950); Carolina Casualty Ins. Co. v.. Towns, 826 F.Supp. 149, 154 (E.D.Va. 1993); Marine Bank & Trust Co. v. Hamilton Brothers, Inc., 55 F.R.D. 505, 506–07 (M.D.Fla.1972); see also Great Western Cities, Inc. v. Curtis, 588 F.Supp. 73, 76 (S.D.N.Y.1984).

Therefore, because the Brannons are properly before the Court pursuant to the nationwide service of process authorized for this federal interpleader action, the Court has personal jurisdiction over them for the purpose of deciding the cross-claims because these cross-claims derive from a common nucleus of operative fact such that the federal claim and the state cross-claims comprise but one constitutional case. City of Chicago, 522 U.S. at 165, 118 S.Ct. 523.

## B.

### 1.

■ The fact that the Court has supplemental personal jurisdiction over the Brannons for the cross-claims does not require that the Court exercise that jurisdiction. Under § 1367(c), the Court "may decline to exercise supplemental jurisdiction over a claim under subsection (a) if --- (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over

---

**6.** While endorsing a flexible rule with respect to cross-claims under the interpleader statute, the same commentators questioned the more general development of supplemental personal jurisdiction under § 1367 following the Court of Appeals decision in IUE AFL–CIO. See 4A Wright and Miller, Federal Practice and Procedure § 1125 at p. 81 (1999 Supp.). The commentators questioned whether the statute was intended to cover personal jurisdiction. Nonetheless, the commentators acknowledged that the Court of Appeals for the Second Circuit had upheld such jurisdiction and that the other Courts of Appeals to have considered the doctrine had also upheld it.

One concern raised by the commentators was that a defendant properly before the court only based on nationwide service of process under a federal statute may have sufficient national contacts to satisfy Fifth Amendment due process but may lack sufficient contacts with the forum to satisfy the Fourteenth Amendment due process standard. However, those contacts can be analyzed in individual cases and, as explained below, the Brannons have sufficient contacts with this forum state to satisfy the minimum contacts necessary for due process under the Fourteenth Amendment.

which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." However, the Court should dismiss a claim over which it has jurisdiction under § 1367(a) only in the four instances described in § 1367(c). *See City of Chicago*, 118 S.Ct. at 533–34; *Itar–Tass Russian News Agency*, 140 F.3d at 447. None of those exceptions apply in this case.

■ Exceptions (1) and (3) do not apply. There is no showing that the cross-claims raise novel or complex issues of State law, and the federal statutory interpleader action has not been dismissed.

With respect to exception (2), the claims asserted in the cross-claims do not substantially predominate over the claims raised in the interpleader action. This exception could be used in situations where the interpleader statute was being used in an abusive way to bring before the Court a wide-ranging dispute that went beyond the actual dispute over the Funds before the Court. The competing claims to the Funds, however, are directly related to the claims in the cross-claims, as even the Brannons acknowledged by conceding that the cross-claims arose out of a common nucleus of operative fact. In the interpleader action, the Related Defendants argue that Related V's capital contributions should be returned because a "Release Condition" has been satisfied. (Compl., Ex. B.) The Company counters that it has fulfilled its duties and is entitled to the Funds in the escrow account because no "Release Condition" as set forth in the Escrow Agreement has been satisfied.

(Compl., Ex. C.) One meaning of the term "Release Condition" as defined in the Escrow Agreement is that prior to Rental Achievement "any of the managers is in material default in any of its obligations under the Regulations." (Compl., Ex. A, ¶ 3(c)(i)(B)) .[7] The cross-claims asserted by the Related Defendants against the Brannons arise out of an alleged breach of the Brannons' obligations and duties under the Regulations. (Answer and Cross–Claim of Related Defendants ¶¶ 18–29.) Thus, the outcome of the interpleader action and cross-claims hinge on whether the Brannons have fulfilled their obligations under the Regulations.

The Related Defendants also seek a declaration that because of the breaches by the Brannons of their obligations under the Regulations, the Contribution Agreement, the Escrow Agreement, and other agreements, the Brannons are not entitled to the Development Fee and that the Related Defendants are entitled to the return of the Funds. (Compl., Ex. A, at p. 1 and ¶ 3(c).) Thus, the statutory interpleader action and the cross-claims are inextricably intertwined with the parties' obligations under the Regulations and the Escrow Agreement and whether those obligations have been satisfied or breached. The issues on the cross-claims do not substantially predominate over the issues in the interpleader action.

With respect to exception (4), this is not a case where "in exceptional circumstances, there are other compelling reasons for declining jurisdiction." The Brannons do argue that the amount at issue on the cross-claims is substantially in excess of the amount at issue in the interpleader action. To support their argument they

---

**7.** Another Release Condition is that "Rental Achievement" has not occurred "within two years after the date when Completion occurs." (*Id.* at ¶ 3(c)(ii).) The Company not only denies that a Release Condition has been met but certifies that "Completion" and "Rental Achievement" have occurred. (Compl., Ex. C.)

point to *State Farm Fire & Casualty Co.* where the Supreme Court noted that relief in connection with an interpleader action should not extend beyond "the needs of orderly contest with respect to the fund." *State Farm Fire & Casualty Co.*, 386 U.S. at 534, 87 S.Ct. 1199. However, this language only refers to the limitation on injunctive relief that a plaintiff can obtain to enjoin other law suits that might conflict with a statutory interpleader action. *See State Farm Fire & Casualty Co.*, 386 U.S. at 533–34, 87 S.Ct. 1199. There were no cross-claims in *State Farm Fire & Casualty Co.*, and the Supreme Court did not suggest any limitations upon cross-claims among claimants who were properly before the Court. *See also* 7 Wright, Miller, & Kane, Federal Practice and Procedure § 1715 at p. 599. Moreover, this argument cannot reasonably be a basis to dismiss the cross-claims in this case. The original action was brought when the amount of Funds placed in the registry of the Court exceeded $900,000, and there was a genuine dispute as to who should receive those Funds. The Brannons deny any wrongdoing on the cross-claims and have asserted that the remainder of the Funds should be paid to the Company. All of these issues are interrelated and it cannot be decided now how much money, if any, could be recovered on the cross-claims.

Finally, there is no evidence that the interpleader action is a sham transaction brought solely to gain personal jurisdiction over the Brannons in New York. The interpleader action is substantial and there is a genuine dispute concerning the Funds. It was reasonable to bring the interpleader suit in New York because the plaintiff resides in New York, the Funds are in New York, and the Escrow Agreement provides that any dispute over the Funds is to be resolved in New York.

2.

The Brannons argue that it would violate their due process rights under the Fourteenth Amendment to require them to defend the cross-claims in this Court because they have insufficient minimum contacts with New York. The Courts of Appeals have not yet specifically determined that a defendant with national contacts sufficient to satisfy due process under the Fifth Amendment, who is properly before the Court pursuant to nationwide service of process for the federal claim, must also have sufficient minimum contacts with the forum for a supplemental state law claim. *See, e.g., IUE AFL–CIO Pension Fund,* 9 F.3d at 1056–57; *ESAB Group, Inc.,* 126 F.3d at 627–29; *Robinson Eng'g Co., Ltd. Pension Plan and Trust,* 223 F.3d at 449–50; *see also* 4A Wright and Miller, Federal Practice and Procedure § 1125 at p. 81 (1999 Supp.). Some courts have held that minimum contacts with the forum are unnecessary because the defendant is already properly before the court pursuant to the nationwide service of process and requiring the defendant to defend the factually related state claim imposes only a minimal burden on the defendant. *See, e.g., Iron Workers Local Union No. 17,* 23 F.Supp.2d at 804–05; *Starlight Int'l, Inc.,* 13 F.Supp.2d at 1178.

It is unnecessary to decide whether it is necessary for the Brannons to have sufficient minimum contacts with New York to satisfy the Due Process Clause of the Fourteenth Amendment because it is clear that they have such contacts. The Second Circuit Court of Appeals has described the principles to be applied in determining the due process limitations on personal jurisdiction:

> The due process clause of the Fourteenth Amendment permits a state to exercise personal jurisdiction over a non-resident defendant with whom it has

"certain minimum contacts ... such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" In determining whether minimum contacts exist, the court considers "the relationship among the defendant, the forum, and the litigation."

. . . .

To establish the minimum contacts necessary to justify "specific" jurisdiction, the [plaintiff] first must show that [his] claim arises out of or relates to [defendant's] contacts with [the forum state]. The [plaintiff] must also show that [the defendant] "purposefully availed" [himself] of the privilege of doing business in [the forum state] and that [the defendant] could foresee being "haled into court" there.

If the [plaintiff] satisf[ies] these requirements, the court also considers whether the assertion of jurisdiction "comports with 'traditional notions of fair play and substantial justice'—that is, whether it is reasonable under the circumstances of a particular case."

*Chaiken v. VV Publ'g Corp.*, 119 F.3d 1018, 1027–28 (2d Cir.1997) (internal citations omitted); *see also Chew v. Dietrich*, 143 F.3d 24, 28 & n. 4 (2d Cir.1998) (due process analysis same under Fifth Amendment except the Court can consider the defendant's contacts throughout the United State under the Fifth Amendment but only contacts with the forum state under the Fourteenth Amendment).

■ The Brannons have sufficient contacts with New York, have purposefully availed themselves of the benefits of this jurisdiction, and could expect to be involved in litigation in New York. The Brannons signed the Regulations in their personal capacities. (Trucksess Decl., Ex. A.) Related and the Related Defendants are located in New York and while there is no evidence that the Brannons traveled to New York to negotiate or execute the various agreements the Brannons and their agents negotiated with representatives of the Related entities in New York by telephone and correspondence. There were frequent negotiations between 1996 through 2000. (Trucksess Decl. ¶ 24.) The Regulations, the Escrow Agreement and the other agreements were executed by the Related entities in New York and the Brannons in Florida, and the documents were exchanged by mail and overnight delivery service. (*Id.* ¶ 25.) Consistent with their obligations under the Regulations, the Brannons sent numerous documents concerning the progress of the Project and the Brannons' financial status to New York. (*Id.* ¶ 26.) The effect of the documents and negotiations was that the Brannons were able to·obtain substantial financing for the Project in Florida from investors in New York. While the Brannons did not personally sign the Escrow Agreement, there is no question that the Agreement was part of the financing of the Project, that it named a New York law firm as escrow agent, and that there was a consent to litigation concerning those Funds in New York. Part of those Funds were allegedly the Development Fee that the Brannons claim to be entitled to under the Regulations. The evidence is more than sufficient to show the requisite nexus between the contacts and the cross-claims, as well as the purposeful availment, necessary to sustain specific jurisdiction at this stage of the case. *See, e.g., Burger King Corp., v. Rudzewicz*, 471 U.S. 462, 479–82, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (finding that Florida court can constitutionally assert specific jurisdiction over party with no physical presence in Florida when dispute grew out of the party's contractual relationship with Florida corporation and the contract contained choice-of-law provision specify-

ing that disputes were to be governed by Florida law); *United Resources 1988–I Drilling and Completion Program, L.P. v. Avalon Exploration, Inc.*, 1994 WL 9676, at *4 (S.D.N.Y. Jan. 10, 1994) (finding sufficient minimum contacts with New York to sustain personal jurisdiction over bank that made phone calls and letters to plaintiffs in New York and opened an account for a deposit wired from New York); *U.N.F. Services, Inc. v. Insurance Co. of North America*, 236 A.D.2d 388, 653 N.Y.S.2d 366 (1997) (finding minimum contacts sufficient to sustain personal jurisdiction over party that mailed insurance policies to New York corporation, serviced policies via mail and telephone, and collected bills and premiums from New York corporation).

■ In determining the "reasonableness" of the assertion of jurisdiction, the Court should consider five factors:

(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial's system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering social substantive policies.

*Kernan v. Kurz–Hastings, Inc.*, 175 F.3d 236, 244 (2d Cir.1999) (citations omitted). These factors weigh in favor of exercising personal jurisdiction over the cross-claims in this case. The fact that the Brannons must defend the cross-claims will not impose a significant additional burden on the Brannons because the issues are intertwined with those they will litigate in the statutory interpleader action. Moreover, the statutory interpleader case is properly in this jurisdiction, and the Company with

which the Brannons are associated consented to resolution of that dispute in this forum. New York has a significant interest in adjudicating the cross-claims both because they are intertwined with the Funds that were deposited with a New York law firm, but also because they concern disputes concerning whether agreements with New York based entities have been breached. The cross-claimants, who are New York based limited partnerships, have an interest in seeing that the claims are litigated in New York and that is the most efficient forum for the litigation of the claims in view of the consent to New York as the jurisdiction to litigate claims under the Escrow Agreement. Thus, the most efficient way to adjudicate this set of disputes is the exercise of personal jurisdiction over the cross-claims.

The requirements of supplemental personal jurisdiction and Fourteenth Amendment due process have been met and the motion to dismiss the cross-claims for lack of personal jurisdiction is denied .[8]

## IV.

The Company and the Brannons object to venue and move to transfer the interpleader action and the cross-claims to the Southern District of Florida pursuant to 28 U.S.C. §§ 1404(a) or 1406(a).

■ Initially, the Brannons' argument that venue is improper in this Court is without merit. Venue is proper pursuant to 28 U.S.C. § 1397, which provides for venue in statutory interpleader cases, in any judicial district "in which one or more of the claimants reside ." Because two of the claimants, the Related Defendants, reside in this District because they have their principal place of business in this

---

**8.** It is therefore unnecessary to determine whether the Brannons are subject to the New York long arm statute. *See, e.g., IUE AFL–CIO Pension Fund,* 9 F.3d at 1057.

District, venue is proper in this District. *See, e.g., Don King Productions, Inc. v. Douglas,* 735 F.Supp. 522, 531 n. 6 (S.D.N.Y.1990) (noting that a limited partnership's principal place of business is its residence for purposes of determining venue). Because venue has been established for the original action, this Court is an appropriate venue for the cross-claims. *See, e.g., Mark E. Mitchell, Inc. v. Charleston Library Soc'y,* 114 F.Supp.2d 259, 262 (S.D.N.Y.2000); *see also ABCKO Music, Inc. v. Beverly Glen Music, Inc.,* 554 F.Supp. 410, 412–13 (S.D.N.Y.1983). Thus, the motion to dismiss the cross-claims based on improper venue is denied. Similarly, 28 U.S.C. § 1406(a) is not a basis for a transfer because venue is proper in this District.

■■■ The Company and the Brannons also move to transfer this action pursuant to 28 U.S.C. § 1404(a). Section 1404(a) provides:

> For the convenience of parties and witnesses, in the interest of justice, a district may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a). In ruling on a motion to transfer, the court should consider both the interest of the litigants and the public interest. *See Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947); *Jasol Carpet, Inc. v. Patcraft Comm. Carpet, Inc.,* No. 96 Civ. 3064, 1997 WL 97831, at *3 (S.D.N.Y. March 6, 1997).

■■■ The interest of the litigants includes the plaintiff's initial choice of forum, the convenience of the parties and the witnesses, the relative ease of access to sources of proof, the availability of compulsory process for the attendance of witnesses, the location of relevant documents and other tangible evidence, questions as to the enforceability of a judgment if one is obtained, and "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Gulf Oil Corp.,* 330 U.S. at 508, 67 S.Ct. 839; *see also Red Bull Assoc. v. Best Western Int'l, Inc.,* 862 F.2d 963, 966–67 (2d Cir.1988). The public interest includes administrative difficulties that follow from court congestion, a local interest in having localized controversies decided at home, and the appropriateness of having the trial of an action in a forum that is at home with the state law that must govern the action. *See Gulf Oil Corp.,* 330 U.S. at 508–09, 67 S.Ct. 839. The party seeking the transfer bears the burden of demonstrating that the factors weigh in favor of a change in venue. *See Factors Etc., Inc. v. Pro Arts Inc.,* 579 F.2d 215, 218 (2d Cir.1978). The plaintiff's forum choice should not be disturbed unless the balance of factors tips heavily in favor of a transfer. *Jasol Carpet,* 1997 WL 97831, at *3.

■■■ In this case, there is a clause in the Escrow Agreement where the Company and the Related Defendants agreed that if there is "a dispute as to the holding or disbursement of the Collateral, such party shall be entitled to bring an action to resolve such dispute in a court of competent jurisdiction of the State of New York or a Federal court located in the Southern District of the State." (Compl., Ex. A, ¶ 17.) The interpleader dispute arises out of the Escrow Agreement and it is clear that the parties agreed that an action arising from such a dispute would be resolved in a New York court.

Forum selection clauses in contracts are regularly enforced. *See Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991); *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988); *M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513

(1972); *see also Effron v. Sun Line Cruises, Inc.,* 67 F.3d 7, 9–10 (2d Cir.1995); *Bense v. Interstate Battery Sys. of America, Inc.,* 683 F.2d 718, 721–22 (2d Cir. 1982). A forum selection clause is not itself dispositive on a motion to transfer, and the district court should still examine the "public policy ramifications of transfer decisions." *Red Bull,* 862 F.2d at 967. Nevertheless, "the presence of a forum selection clause ... will be a significant factor that figures centrally in the district court's [§ 1404(a) ] calculus." *Stewart,* 487 U.S. at 29, 108 S.Ct. 2239.

The Company and the Brannons have not met their burden of demonstrating the need for a transfer with respect to the statutory interpleader claim. They have not shown that the interest of the litigants necessitates a transfer. The parties to the Escrow Agreement agreed that the litigation could be brought in New York. Two of the claimants reside in New York. The Funds are located in New York and were deposited by a New York law firm which was the stakeholder. While some of the negotiations occurred in Florida, the agreements were also negotiated with parties in New York. While the Project, many witnesses, and documents may be located in Florida, the convenience to those witnesses does not outweigh the fact that the Company and the Related Defendants agreed to the forum selection clause. It is plainly more convenient for the Related Defendants and their witnesses as well as for RubinBaum to litigate this action in New York.

The Company and the Brannons have not shown that the public interest necessitates a transfer. While Florida law may govern many issues, the Escrow Agreement itself is governed by New York law and this Court can apply Florida law. This action can be expeditiously handled in this Court.

The Company and the Brannons argue that the cross-claims should be severed and transferred to the Southern District of Florida. The Brannons argue that it would be unfair to require them to litigate the cross-claims here because they never consented to personal jurisdiction here. On the other hand, the Company has consented to jurisdiction and venue in New York for disputes arising out of the Escrow Agreement and has not argued that the Court lacks personal jurisdiction over it with respect to the cross-claims. Removal of the cross-claims in this case would undermine the purpose of statutory interpleader, which is to minimize the possibility of conflicting results by different courts. Both the statutory interpleader action and the cross-claims involve the interpretation of the Regulations. Splitting the actions could lead to differing results with respect to the same agreement. The cross-claims arise out of the same basic set of facts as the statutory interpleader claim and it would be inefficient to allow litigation in two forums when the issues can be resolved in one.

Finally, the Company and the Brannons argue that the interpleader action should be viewed in two stages, the first involving the discharge of RubinBaum as a result of its deposit of the Funds, and the second involving the dispute among the claimants to the Funds which the Brannons assert should proceed in Florida. However, the Brannons have not offered a release to RubinBaum and the Company has alleged wrongdoing by RubinBaum for having failed to pay out the Funds. RubinBaum thus has an interest in participating in the continuing litigation. Moreover, the dispute among the claimants to the Funds is a dispute which the parties to the Escrow Agreement agreed could proceed in New York. Neither the Company nor the Brannons have made the strong showing neces-

sary to split that litigation from the issue of the discharge for RubinBaum and then transfer that litigation among the claimants to the Funds to Florida.

### CONCLUSION

For the reasons explained above, the motions to dismiss by the Company and the Brannons pursuant to Fed.R.Civ.P. 12(b) and in the alternative to transfer venue to the Southern District of Florida pursuant to 28 U.S.C. § 1404(a) or 28 U.S.C. § 1406(a) are denied.

**SO ORDERED.**